JAMES ARMSTRONG'S CASE.

No. 97-P-1735.

Suffolk. January 14, 1999. - September 10, 1999.

Present: JACOBS, SMITH, & SPINA, JJ.

*Workers' Compensation Act,* Cancellation of insurance. *Insurance,* Workers' compensation insurance, Cancellation. *Statute,* Construction.

The reviewing board of the Department of Industrial Accidents correctly concluded that an insurer had not complied with the notice requirements of G. L. c. 152, § 65B, to cancel a policy of workers' compensation insurance, and that the insurer, rather than the Workers' Compensation Trust Fund, was responsible for compensating an injured employee entitled to benefits. [696-697]

APPEAL from a decision of the Industrial Accident Reviewing Board.

*Charles W. Dixon* for the insurer.

*Vincent F. Massey,* Special Assistant Attorney General (*Dino Theodore,* Special Assistant Attorney General, with him) for Workers' Compensation Trust Fund.

SMITH, J. This is an appeal by Aetna Casualty and Surety Company (Aetna or insurer), from a decision by the reviewing board of the Department of Industrial Accidents (DIA) which held that Aetna, rather than the Workers' Compensation Trust Fund (Trust Fund), was responsible for the payment of compensation benefits to James Armstrong (employee), because Aetna had not properly cancelled its workers' compensation insurance policy issued to Town and Country Carpentry (employer).[1]

---

[1] In *Frost* v. *David C. Wells Ins. Agency, Inc.,* 14 Mass. App. Ct. 305, 306-309 (1982), we interpreted G. L. c. 152, § 63, which sets out the guidelines for terminating all policies of workers' compensation insurance. We stated that because "[w]orkers' compensation insurance is compulsory, and noncompli-

As a result of an industrial accident on July 21, 1989, the employee filed four claims for workers' compensation benefits. The claims were filed against (1) Aetna as the insurer of the employer, (2) Aetna as the insurer of Rafter-Gabler Properties, Inc. (RGP), the alleged general contractor of the employer, (3) the Trust Fund in the event that the employer was, in fact, uninsured, and (4) American Mutual, naming RGP as the employer under G. L. c. 152, § 18.[2]

At a conference held pursuant to G. L. c. 152, § 10A, the employee's claims were denied, except for his claim against the Trust Fund. The Trust Fund appealed (G. L. c. 152, §§ 10A & 11), and at the hearing the employee withdrew his claim against American Mutual and proceeded with the other three claims. On October 21, 1991, the administrative judge denied and dismissed the claims against Aetna, and ordered the Trust Fund to pay disability benefits to the employee pursuant to G. L. c. 152, § 34.

The Trust Fund then appealed to the reviewing board pursuant to G. L. c. 152, § 11C, arguing that Aetna was liable because it had failed to follow the proper procedures for cancelling the employer's insurance policy under G. L. c. 152, § 65B, and, in the alternative, that Aetna was liable under G. L. c. 152, § 18, because it insured the employer's general contractor. The reviewing board (in a two-to-one decision) reversed the administrative judge's decision, ruling that the administrative

ance carries with it severe penalties[,]" coverage continues despite expiration of the policy where there has been no compliance with the statutory notice requirement. *Id.* at 307-308.

Therefore, although the accident in this matter happened after the expiration date of the policy, the reviewing board held that it was covered because of Aetna's lack of compliance with the notice requirement. Aetna argues only that it effectively cancelled its policy and does not contest the reviewing board's determination that absent effective cancellation, the coverage of the policy continued after its expiration date.

[2]General Laws c. 152, § 18, provides, in part: "If an insured person enters into a contract, written or oral, with an independent contractor to do such person's work, or if such a contractor enters into a contract with a sub-contractor to do all or any part of the work comprised in such contract with the insured, and the insurer would, if such work were executed by employees immediately employed by the insured, be liable to pay compensation under this chapter to those employees, the insurer shall pay to such employees any compensation which would be payable to them under this chapter if the independent or sub-contractors were insured persons." See *Mobil Oil Corp.* v. *Roumeliotis*, 38 Mass. App. Ct. 245, 246 (1995).

judge had committed error in determining that Aetna's cancellation of the employer's policy was effective and that the Trust Fund was responsible for compensating the employee. The reviewing board did not reach the second issue.

On appeal, Aetna argues that the administrative judge's decision was supported by the evidence, untainted by error of law and not arbitrary or capricious, and accordingly should not have been reversed by the reviewing board.

We summarize the facts, noting at the outset that the parties do not dispute that the employee was disabled as a result of the accident, and therefore entitled to benefits.

Aetna issued a workers' compensation insurance policy to the employer for the period covering May 13, 1988, to May 13, 1989. The policy was an "assigned risk" policy; the Workers' Compensation Rating and Inspection Bureau of Massachusetts had assigned it to Aetna pursuant to G. L. c. 152, § 65A.

In 1987, the employer's business was located at 135 Mendon Street, Blackstone. However, two applications for insurance filed on behalf of the employer mistakenly listed an address of 130 Mendon Street, which was a vacant lot.

On November 8, 1988, the employer signed a document addressed to Aetna, notifying it that the company had changed its name to Town and Country Carpentry, Inc., and that its new address would be 117 Mendon Street. The employer's insurance agent forwarded the document to Aetna on November 18.

Meanwhile, however, on November 14, 1988, Aetna sent a notice to the employer at 130 Mendon Street stating that the policy would be cancelled effective November 28, 1988, if a payment of $1,090.55 was not received by that date. The letter, which was sent certified mail, was returned unclaimed on December 1, 1988. Aetna did not send any other notice, and never attempted to re-bill the employer at the correct address (117 Mendon Street), although it received that address six days prior to the effective date of the cancellation, and despite having the original letter returned unclaimed.

On January 10, 1989, Aetna notified the DIA that the employer's policy had been cancelled on November 28, 1988, for nonpayment of the premium. There was nothing in the DIA's records demonstrating that it had approved of the cancellation.

When Aetna issued the employer's insurance policy on May 13, 1988, the applicable version of G. L. c. 152, § 65B, provided:

"If, after the issuance of a policy under section sixty-five A, it shall appear that the employer to whom the policy was issued is not or has ceased to be entitled to such insurance, the insurer, with the approval of the department, may cancel such policy in the manner provided in this chapter; provided, that any insurer desiring to cancel such a policy shall give notice in writing to the department and the insured of its desire to cancel the same. The department may approve such cancellation unless the employer shall within ten days after the receipt of such notice file with the department objections thereto . . . ."

G. L. c. 152, § 65B, as amended by St. 1986, c. 662, § 45.

Before a policy issued pursuant to G. L. c. 152, § 65A, can be cancelled, the statute requires two steps: (1) written notice must be sent to both the insured employer and the DIA concerning the insurer's desire to terminate the policy; and (2) the DIA must approve of the cancellation, although the employer shall have ten days from the receipt of notice to file an objection. See G. L. c. 152, § 65B. These steps must be complied with before a policy termination is valid.[3]

Here, Aetna sent notice via certified mail to the employer at the wrong address; it was returned unclaimed on December 1, 1988. In the interim, however, the employer had forwarded an unrelated notice to Aetna indicating a change of name and address. Aetna never attempted to send an additional notice regarding the impending cancellation to the new address (or any other address on file). Consequently, one of the requirements under § 65B was not met.

Moreover, the DIA was not sent notice of the intended termination until January 10, 1989 — approximately six weeks after Aetna "cancelled" the policy. The plain language of the statute requires that the DIA receive notice prior to the cancellation ("any insurer desiring to cancel such a policy shall give notice in writing to the department . . . *of its desire to cancel the same*" [emphasis supplied]). In addition, there is no evidence that the DIA actually approved the cancellation, which is also required by § 65B.

---

[3]We note that the reviewing board has held that an "insurer did not effectively cancel its policy [when] it did not obtain the required department approval for the cancellation." *Quintal* v. *Berube*, 9 Mass. Workers' Comp. Rep. 375, 383 (1995).

Thus, Aetna failed to meet the requirements of the statute, rendering its attempted cancellation ineffective. Accordingly, because it did not comply with the statutory notice requirement, Aetna is responsible for the payment of compensation benefits to the employee.

The decision of the reviewing board of the DIA is affirmed.

*So ordered.*