### DANIEL CUMMINGS'S CASE.

No. 99-P-1796.

Suffolk. May 3, 2001. - August 31, 2001.

Present: PORADA, KANTROWITZ, & COHEN, JJ.

*Insurance,* Workers' compensation insurance, Cancellation. *Workers' Compensation Act,* Cancellation of insurance, Premium. *Statute,* Construction.

An insurer who, pursuant to G. L. c. 152, § 65A, had been designated to issue a workers' compensation insurance policy to an employer as an assigned risk, could not unilaterally rescind, or otherwise terminate, the policy issued upon realizing that the initial premium fee had not been paid, without complying with the procedures set forth in G. L. c. 152, § 65B. [447-450]

APPEAL from a decision of the Industrial Accident Reviewing Board.

*John A. Smillie* for Eastern Casualty Insurance Company.

*John J. Canniff* for AIU Insurance Company.

*Thomas F. Grady, III*, for the employee.

*Richard A. Fairbrothers*, Special Assistant Attorney General, for Workers' Compensation Trust Fund.

KANTROWITZ, J. The issue before us is whether an insurer who, pursuant to G. L. c. 152, § 65A, has been designated to issue a workers' compensation insurance policy to an employer as an assigned risk, may unilaterally rescind, or otherwise terminate, the policy issued upon realizing that the initial premium fee has not been paid, without complying with the procedures set forth in G. L. c. 152, § 65B. We conclude that, in the circumstances of this case, it may not.

On March 26, 1996, Daniel Cummings, an employee of Demolition Specialists, Inc. (Demolition Specialists), was injured on a construction job. There is no dispute that his injury is covered under the workers' compensation act. Less clear is

the party responsible for his payments: AIU Insurance Company (AIU),[1] Eastern Casualty Insurance Company (Eastern),[2] Workers' Compensation Trust Fund (Trust Fund),[3] or Demolition Specialists.[4]

*Facts.* On February 1, 1996, Jeffrey Kukene, president of Demolition Specialists, completed an application for insurance through the assigned risk pool.[5] Along with his application, he tendered a check for $9,010, the initial premium amount, to the Massachusetts Workers' Compensation Rating and Inspection Bureau (Rating Bureau).

On February 21, 1996, the Rating Bureau issued a notice of assignment stating that Eastern was the assigned carrier for Demolition Specialists effective February 10, 1996, and that a policy had been issued. Also on February 21, 1996, the Rating Bureau forwarded Demolition Specialists' check for the premium to Eastern which Eastern deposited. On March 6, 1996, the check was returned to Eastern due to insufficient funds.

Eastern notified Demolition Specialists by letter dated March

---

[1]AIU Insurance Company covered the general contractor, Boston Development Construction (BDC), for workers' compensation claims. One of BDC's subcontractors at the time was Demolition Specialists. Under G. L. c. 152, § 18, the insurer of an independent contractor is liable for workers' compensation claims brought by employees of an uninsured subcontractor.

[2]Cummings filed his claim against AIU because he believed Demolition Specialists was uninsured. AIU joined Eastern on the theory that Eastern had improperly canceled or terminated Demolition Specialists' original policy. Subsequently, the Workers' Compensation Trust Fund as well as Demolition Specialists were joined.

[3]The Trust Fund is liable for the payments in cases where the employer is uninsured and no other insurance company is liable. G. L. c. 152, § 65.

[4]If the Trust Fund is found liable, it can recover its losses from the uninsured employer. G. L. c. 152, § 65.

[5]Massachusetts law requires employers to provide workers' compensation insurance; failure to do so is a criminal offense. See G. L. c. 152, § 25C. Since some employers are unable to obtain such insurance in the voluntary market, the Massachusetts Workers' Compensation Assigned Risk Pool was created to aid employers in satisfying their obligations under the law. G. L. c. 152, § 65A. Employers who demonstrate that their application for workers' compensation insurance has been rejected by two insurers may apply to the assigned risk pool. *Ibid.* If the employer meets all the requirements under G. L. c. 152, § 65A, the Workers' Compensation Rating and Inspection Bureau of Massachusetts, designated to administer the pool, will assign the employer an insurance carrier. *Ibid.* See *Kszepka's Case*, 408 Mass. 843, 848 (1990).

12, 1996, that the check had been returned marked insufficient funds. In the letter, Eastern informed Demolition Specialists that "the notice of assignment had been rescinded and that no coverage had been provided." Eastern also advised Demolition Specialists to submit a new application for insurance to the Rating Bureau.[6]

Demolition Specialists received Eastern's letter on March 13, 1996, and promptly sent a new application to the Rating Bureau accompanied by a cashier's check for the premium due. A new notice of assignment was issued on April 23, 1996, indicating that Demolition Specialists was again covered by Eastern, effective March 28, 1996. The accident involving Cummings occurred two days prior to the effective date of this new policy. Eastern deposited the cashier's check on May 3, 1996.

An administrative judge of the Department of Industrial Accidents (department), concluding that the policy had issued on February 10, 1996, found that Eastern had provided coverage for Cummings's claim, and that it had not properly terminated the policy as of the date of Cummings's injury, as it had failed to notify the Rating Bureau of its rescission until April of 1996. The reviewing board summarily affirmed the administrative judge's decision. Eastern appealed. We affirm.

*Background.* The purpose of G. L. c. 152 is to ensure that financial assistance is made readily and speedily available to injured employees. See *Brown* v. *Leighton*, 385 Mass. 757, 761 (1982). As a necessary corollary, it is essential that the Rating Bureau know, with as much accuracy as possible, who is insured. *Frost* v. *David C. Wells Ins. Agency, Inc.*, 14 Mass. App. Ct. 305, 308 (1982).

In cases where an employer is unable to obtain insurance on its own, it may apply to the commissioner of insurance. G. L.

---

[6]Eastern contended that it sent a copy of this letter to the Rating Bureau; however, since no return receipt was found, there is no proof of the Rating Bureau's receipt of the letter. In contrast, Eastern's file contained a return receipt for the letter sent to Demolition Specialists. If this letter had been received by the Rating Bureau, the policy would have been rescinded, subject to the ten-day appeal period. See G. L. c. 152, § 65B. The Rating Bureau did receive, on April 16, 1996, a notice of rescission, which Eastern mailed on April 9.

c. 152, § 65A.[7] The commissioner will then assign an insurance carrier, from the assigned risk pool, to the employer if all the requirements are met. *Ibid.* This process is administered by the Rating Bureau. The risks taken by the insurance carriers for providing insurance to these high-risk employers is distributed equitably among the insurers. *Ibid.* If the insurer wishes to cancel or otherwise terminate a policy issued under G. L. c. 152, § 65A, it must provide written notice to the Rating Bureau and the insured employer of its intention. G. L. c. 152, § 65B. The termination is effective unless the employer files objections within ten days after receipt of the notice. See *ibid*; *Armstrong's Case*, 47 Mass. App. Ct. 693, 696 (1999).

*Discussion.* Had Demolition Specialists' initial check cleared, there would be no question as to the liability of Eastern. However, since the check was returned for insufficient funds on March 6, Eastern contends that a condition precedent (i.e., payment) for issuing the policy was not met and, thus, no policy was in effect on the date of the employee's injury. Eastern bases its argument on the common law doctrine of rescission[8] and on the language in G. L. c. 152, § 65A, which provides that "the commissioner shall designate an insurer who shall forthwith, *upon the receipt of the payment for the premium therefore*, issue to such employer a policy of insurance" (emphasis added).

---

[7] The relevant portion of G. L. c. 152, § 65A, states:

"(1) Any employer whose application for workers' compensation insurance has been rejected or not accepted within five days by two insurers may appeal to the commissioner of insurance and if it shall appear that such employer has complied with or will comply substantially with all laws, orders, rules and regulations in force and effect relating to the welfare, health and safety of his employees, and shall not be in default of payment of any premium for such insurance, then the commissioner shall designate an insurer who shall forthwith, upon the receipt of the payment for the premium therefore, issue to such employer a policy of insurance contracting to pay the compensation provided for by this chapter."

[8] Rescission is an equitable remedy granted when there has been a mutual mistake of fact or fraud between the parties. The purpose of rescission is to place the injured party in status quo ante. See Nolan & Sartorio, Equitable Remedies § 403 (2d ed. 1993). See also *Yorke* v. *Taylor*, 332 Mass. 368, 371 (1955); *Demoulas* v. *Demoulas*, 428 Mass. 555, 590 (1998).

The language in G. L. c. 152, § 65A, upon which Eastern relies, is difficult to rationalize with the actual method by which assigned risk policies are 'issued. Coverage is bound as of the date the notice of assignment states the policy was issued, irrespective of when the premium funds are actually in the insurer's hands.[9] See note 11, *infra*. This practice apparently has evolved in light of the necessity of ensuring that coverage is provided for injured employees[10] and the time it may take for a check to clear. Indeed, Eastern's Director of Underwriting testified, and acknowledged, that this is the manner in which coverage is obtained.[11] We therefore are constrained to rule that a policy was issued by Eastern effective as of February 10, 1996.

We now turn to the question whether Eastern properly canceled or otherwise terminated the policy. See G. L. c. 152, § 65B.[12] We conclude that it did not.

In *Armstrong's Case*, the insurer issued a workers' compensa-

---

[9]One obvious solution would be to require that the employer pay by certified check, which is how Demolition Specialists ultimately paid after the first check bounced. This, however, is a policy decision best left to the Rating Bureau.

[10]See *CNA Ins. Cos.* v. *Sliski*, 433 Mass. 491, 496 (2001) (" 'The history of workmen's compensation in this Commonwealth shows that the Legislature gradually but consistently has enlarged the scope of the laws pertaining to it, and that the courts have construed those laws liberally for the protection of the injured employee.' *Roberge's Case*, 330 Mass. 506, 509 (1953), and cases cited.")

[11]His testimony at the hearing before the administrative judge was that "[c]overage is bound by the [Rating Bureau], not by the servicing carrier. When the [Rating Bureau] receives applications, reviews it, they determine the effective dates of the coverage, and then the assignment to us indicates issue of policy, effective such and such date. . . . Coverage [for the first policy in this case] was bound effective 2/10/96."

[12]G. L. c. 152, § 65B, states:

"If, after the issuance of a policy under section sixty-five A, it shall appear that the employer to whom the policy was issued is not or has ceased to be entitled to such insurance, the insurer may cancel or otherwise terminate such policy in the manner provided in this chapter; provided, however, that any insurer desiring to cancel or otherwise terminate such a policy shall give notice in writing to the rating organization and the [insured] of its desire to cancel or terminate the same. Such cancellation or terminations shall be effective unless the employer, within ten days after the receipt of such notice, files with the department's office of insurance objections thereof, and, if such objections are filed, the commissioner, or his designee shall hear and decide

tion assigned risk policy to the employer for the period covering May 13, 1988, to May 13, 1989. On November 14, 1988, the insurer mailed the employer a letter indicating that the policy would be canceled in two weeks unless a premium payment was made. When the payment was not forthcoming, the insurer canceled the policy. The cancellation was held to be ineffective in that the insurer failed to fully comply with the notice requirements of § 65B by not sending a copy of the notice to the department.[13] 47 Mass. App. Ct. at 696.

A similar result was reached in *Frost*, where the workers' compensation policy expired by its own terms. "On September 24, 1975, [the insurer] issued a workers' compensation insurance policy for a period of nine months and, on November 17, sent written notice of that fact to the [department], pursuant to G. L. c. 152, § 63.[14] The notice stated that the policy was issued for a period of nine months [and expired in June, 1976]. No other notice was sent to the [department by the insurer]." 14 Mass. App. Ct. at 306-307. This court rejected the assertion that the November 17 letter satisfied the notice requirements of the statute. We held that where the insurer failed to comply with the statutory requirements of termination, coverage continued.[15] "If [the insurer's] contention were correct, not only would the [department's] task [to ensure coverage by employers] be made

the case within a reasonable time thereafter. Further appeal of the decision of the department may be taken to the superior court for the county of Suffolk."

[13]Section 65B, amended by St. 1991, c. 398, § 90A, now requires notice to the Rating Bureau. The applicable law in *Armstrong's Case* required notice to, and approval by, the department.

[14]*Frost* did not involve assigned risk policies. See G. L. c. 152, §§ 65A et seq. Section 63 of G. L. c. 152 provides for the cancellation or termination of a workers compensation insurance policy not obtained through the assigned risk pool: "Such insurance shall not be canceled or shall not be otherwise terminated until ten days after written notice of such cancellation or termination is given to the rating organization or until a notice has been received by said organization that the employer has secured insurance from another insurance company or has otherwise insured the payment of compensation by this chapter." The rationale underlying the notice requirements of §§ 63 and 65B are the same.

[15]The insurer was thus responsible for an accident that occurred in August, well after the June expiration date. *Frost*, 14 Mass. App. Ct. at 306-307.

more onerous by requiring it to keep a file of the dates of expiration of all employers' policies, but also the [department] would be unable to ascertain from its records whether an employer had coverage." *Id.* at 308. See G. L. c. 152, § 63.

There are similar policy considerations in the case at bar. If Eastern wished to cancel the policy, it had to conform to the requirements of § 65B, which it failed to do when it did not notify the Rating Bureau in a timely manner. A contrary decision would "be disruptive of the time and energy of the [Rating Bureau] and hence contrary to the principles of sound administrative procedure," *Ferreira* v. *Arrow Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 633, 636 (1983), and would defeat the purpose of G. L. c. 152, §§ 63 and 65B, which allow the department to know with certainty whether an employer is insured. *Frost, supra* at 308.

Since Eastern could not unilaterally rescind the policy, and since it did not comply with the requirements of G. L. c. 152, § 65B, it insured Demolition Specialists, effective February 10, 1996, and provided coverage on the date of Cummings's injury on March 26, 1996.[16] The decision of the reviewing board is affirmed.

*So ordered.*

---

[16]Mitigating against any unfairness to Eastern is the fact that the premium was eventually paid.