KENNETH G. PILLMAN'S CASE.

No. 06-P-469.

Suffolk. January 16, 2007. - May 30, 2007.

Present: GREENBERG, COHEN, & VUONO, JJ.

*Workers' Compensation Act,* Decision of Industrial Accident Reviewing Board,
Cancellation of insurance.

The reviewing board of the Department of Industrial Accidents correctly
concluded that an insurer was liable for payments made to an injured
employee from the Workers' Compensation Trust Fund, where the insurer's
attempt to cancel a workers' compensation insurance policy issued to the
employer was ineffectual under G. L. c. 175, § 187C, given that the insurer,
after the original notice of cancellation that it sent to the employer was
returned as undeliverable, did not resend the notice to a second address
contained in its records for the employer. [181-185]

APPEAL from a decision of the Industrial Accident Reviewing
Board.

*Paul M. Moretti* for the insurer.

*David A. Guberman,* Assistant Attorney General, for Work-
ers' Compensation Trust Fund.

COHEN, J. In this appeal from a decision of the reviewing board
of the Department of Industrial Accidents (board), we consider
whether All America Insurance Company (insurer) effectively
canceled a voluntary policy of workers' compensation insurance
issued to Dan's Paving and Excavating, Inc. (Dan's Paving). At
issue is the insurer's liability for benefits awarded to a Dan's
Paving employee, Kenneth G. Pillman (employee), who suffered
an industrial injury subsequent to the attempted cancellation.

On the assumption that no policy was in force, the employee
sought and obtained benefits under G. L. c. 152, §§ 34 and 35,
from the Workers' Compensation Trust Fund (Trust Fund). The
Trust Fund moved to add Dan's Paving to the proceedings, and

Dan's Paving, in turn, moved to add the insurer. With these additional parties before him, an administrative judge conducted an evidentiary hearing with respect to the cancellation issue.[1] The administrative judge determined that the attempted cancellation was ineffective, and in a split decision, the board affirmed his decision. Upon consideration of the insurer's appeal to this court, we agree that the policy was not effectively canceled and that the insurer is liable for any benefits paid to the employee.

*Facts.* We begin with a summary of the administrative judge's findings, supplemented by our own observations of the documents admitted in evidence and relied upon by the administrative judge in his decision.[2] In 1999, the insurer issued a policy of workers' compensation insurance to Dan's Paving for the period August 23, 1999, to August 23, 2000. Thereafter, the insurer sought to cancel the policy, as of April 4, 2000, for nonpayment of premium. It did so by mailing a notice of cancellation, on March 20, 2000, to 39 Drake Road, Fitchburg, Massachusetts, as evidenced by a certificate of mailing receipt.

Before the policy was issued, the agent who produced the policy met with the principal of Dan's Paving, Michael McGane, at a different address — 526 Electric Avenue, Fitchburg — where Dan's Paving's operations were located. It was, however, the Drake Road address, which was McGane's residence address, that was given to the insurer as the mailing address for Dan's Paving.[3] When the policy was issued, the Drake Road address appeared on page one of the policy's three-

---

[1]The administrative judge had previously allowed a motion to bifurcate the proceedings in order to resolve the coverage issue before hearing the remaining issues in the case.

[2]These documents include only a short excerpt from the policy — three sheets comprising the so-called "Information Page" or declarations. We do not know whether the printed terms of the policy were available to the administrative judge or the board; in any event, they are not contained in the appellate record. As no one has called to our attention any potentially relevant language in the policy text, we must proceed on the assumption that none exists.

[3]How this came to pass was in dispute. The agent testified that, after calling Dan's Paving to solicit its business, he met with McGane at the Electric Avenue address. He recalled that Dan's Paving's old policy — the one in effect before he became involved — listed the Drake Road address as the mailing address for the insured. He believed that he confirmed with McGane that

page declarations, which, collectively were entitled "INFORMA-TION PAGE — NEW POLICY." The Drake Road address was listed as "ITEM 1" under the heading: "THE INSURED AND MAILING ADDRESS." Also listed under "ITEM 1" were the words "OTHER WORKPLACES NOT SHOWN ABOVE: SEE EXTENSION OF INFORMATION PAGE." The "EXTENSION OF INFORMATION PAGE ITEM #1" was located at page three of the declarations. There, beside the words "ADDNL" and "LOCATION NUMBER 002," the Electric Avenue address was listed.

The notice of cancellation was never received by Dan's Paving or McGane, who had moved his residence and had not given a new address to the insurer. Within a few days, the insurer's mailing was returned as undeliverable.[4] The following notation was then made on the returned envelope: "4-6-00 — Per comment on the CLP policy, agt. has no new address for the insured — Did not re-send canc." The insurer made no attempt to resend the notice to the Electric Avenue address.

*Decisions below.* On the basis of the above facts, the administrative judge determined that the attempted cancellation was not effective, "as the insurer did not exercise due diligence." Although he did not identify any particular, supporting authority, he concluded that when the cancellation notice was returned, it was incumbent upon the insurer to mail a subsequent cancellation notice to the "additional address" listed in the policy. He therefore ruled that the policy remained in effect at the time of the employee's injury[5] and provided coverage for any benefits he received.

On appeal, a majority of the reviewing board panel agreed

he wished to keep that mailing address, and that he also confirmed the "location address" at Electric Avenue. McGane testified to the contrary — stating that he informed the agent that the Electric Avenue address was to be used for billing, as was his custom. This testimonial conflict was not resolved by the administrative judge.

[4]The envelope bore a stamp indicating that forwarding had expired.

[5]The injury did not occur until October 6, 2000, which was a little more than one month after the policy period would have expired. The insurer does not dispute, however, that the policy would have continued in effect beyond the policy period, absent proper cancellation or notice of termination on its expiration date. See *Frost* v. *David C. Wells Ins. Agency, Inc.*, 14 Mass. App. Ct. 305, 306-309 (1982) (construing G. L. c. 152, § 63).

with the result reached by the administrative judge, arriving at that conclusion by way of statutory analysis. The board opined that the operative cancellation statute was G. L. c. 175, § 187C, which generally governs the cancellation of insurance contracts in the Commonwealth when no other specific statute is applicable.[6] After parsing the language of that statute, the board concluded that, when the notice was returned as undeliverable, the insurer was required to resend it to the other address contained in its records.[7]

*Discussion.* We agree with the board that the insurer was required to comply with G. L. c. 175, § 187C, as amended through St. 1990, c. 287, § 2, in order to cancel the voluntary workers' compensation policy at issue in this case. That statute provides in relevant part:

"A company issuing any policy of insurance which is subject to cancellation by the company shall effect cancellation by serving the notice thereof provided by the policy and by paying or tendering, except as provided in this and the following section, the full return premium due thereunder in accordance with its terms without any deductions. Such notice and return premium, if any, shall be delivered in hand to the named insured, or be left at his last address as shown by the company's records or, if its records contain no such address, at his last business,

---

[6]Under the board's precedents, G. L. c. 175, § 187C, applies to the cancellation of workers' compensation policies written on a voluntary basis, requiring that notice of cancellation of such policies be given to the insured employer. See *Martinez* v. *Northbound Train, Inc.*, 18 Mass. Workers' Comp. Rep. 294, 302-303 (2004), and cases cited. This requirement augments that specified in the workers' compensation act, G. L. c. 152, § 63, which provides that notice of cancellation must be given to the rating organization authorized by G. L. c. 152, § 52. See, e.g., *Fontaine* v. *Evergreen Constr. Co.*, 13 Mass. Workers' Comp. Rep. 62, 65-66 (1999); *Dembitzski* v. *Metro Flooring, Inc.*, 13 Mass. Workers' Comp. Rep. 348, 354-355 (1999). See also *Trudeau's Case*, 280 Mass. 429 (1932) (applying a related section, G. L. c. 175, § 187D, in workers' compensation cases). In cases involving assigned risk policies, the board, construing G. L. c. 152, § 65B, requires that the employer receive the cancellation notice. See *Martinez* v. *Northbound Train, Inc.*, 18 Mass. Workers' Comp. Rep. at 303 n.7.

[7]The dissenting board member would have reversed on the ground that the statute's requirements were fulfilled when the insurer mailed the notice of cancellation to "the name and address of the insured stated in the policy" and obtained a confirmatory certificate of mailing.

residence or other address known to the company, or be forwarded to said address by first class mail, postage prepaid, and a notice left or forwarded, as aforesaid, shall be deemed a sufficient notice. No written notice of cancellation shall be deemed effective when mailed by the company unless the company obtains a certificate of mailing receipt from the United States Postal Service showing the name and address of the insured stated in the policy."[8]

Tracking the language of the statute, the initial and overarching requirement is that the insurer must "serve notice" upon the insured. The statute then specifies the ways in which notice may be served: by delivery in hand to the named insured, by leaving it at the named insured's last address as shown by the company's records, or, if its records contain no such address, at the named insured's last business, residence, or other address known to the company. Alternatively, the statute permits notice to be forwarded by first class mail, postage prepaid, to "said address," i.e., the last address as shown by the company's records, or, if its records contain no such address, the named insured's last business, residence, or other address known to the company. If a notice is "left or forwarded, as aforesaid," it "shall be deemed a sufficient notice."[9] G. L. c. 175, § 187C.

The insurer contends that it fulfilled the requirements of the statute by sending its notice to the Drake Road address, arguing that the Drake Road address was Dan's Paving's "last address as shown by the company's records." Contending that the sufficiency of a notice of cancellation must be determined as of the time of mailing, *Liberty Ins. Co.* v. *Wolfe*, 7 Mass. App. Ct. 263, 265 (1979), the insurer maintains that the propriety of that notice was unaffected by the insurer's later knowledge that the address it used no longer was valid.

---

[8]We note that no issue is presented with respect to the tender of any return premium. Although the Trust Fund previously raised such an argument, it no longer presses it.

[9]The statute provides further that notice is ineffective unless the company obtains a certificate of mailing receipt showing the name and address of the insured stated in the policy. As the administrative judge found, the company did, in fact, obtain such a certificate. That does not end the inquiry, however. Obtaining a certificate of mailing does not satisfy the statute if the notice is not otherwise compliant.

Essential to the insurer's position is the premise that the "last address as shown by the company's records" means "mailing address," and the further premise that only the Drake Road address was Dan's Paving's mailing address (the Electric Avenue address being a "location address" and not a mailing address). For reasons that are somewhat different from those expressed by the board, we think this analysis is problematic and conclude that the insurer did not satisfy the statutory requirements for canceling the policy.

"[I]n construing a statute, its words must be given their plain and ordinary meaning according to the approved usage of language." *Taylor's Case*, 44 Mass. App. Ct. 495, 499 (1998), quoting from *Johnson's Case*, 318 Mass. 741, 746-747 (1945). In ordinary parlance, the word "last" means "most up-to-date" — and the word "address" means "a place where a person or organization may be communicated with." Merriam-Webster's Collegiate Dictionary 15, 702 (11th ed. 2005). Therefore, a reasonable reading of the statute is that an insurer attempting to cancel a policy of insurance must send notice to the most up-to-date place where the insured might be reached as contained in the insurer's records, i.e., the "last address."

If, as reflected by the written terms of the policy, the insurer and the insured plainly have agreed to a particular, designated address for communications to the insured, there is some practical force to the insurer's position that the designated address should be considered to be the "last address as shown by the company's records."[10] If, however, the insurer's records contain more than one address and the policy does *not* clearly identify the place where notices will be sent, then all addresses in the company's records potentially fall within the statutory category of "last address." In such a case, we think it is not sufficient

_____

[10]A consequence of reading the statute in this way is that, even if a cancellation notice sent to that address is returned as undeliverable, the insurer will have served notice in accordance with the statute, assuming that the insurer did not know at the time of mailing that the address no longer was valid. If the insurer did know at the time of mailing that the agreed-to mailing address no longer was valid, then its records would not have contained the insured's "last address." The insurer then would have been required to resort to the insured's "last business, residence or other address known to the company" in order to satisfy the third clause of the second sentence of § 175C.

under the statute for the insurer to send notice to only one such address and, after learning that the address utilized no longer is valid, to ignore other such addresses in its possession.

In the present case, the policy documents before us are equivocal, at best, as to the intended purposes of the two listed addresses.[11] Both the Drake Road and Electric Avenue addresses appear in the declarations, albeit on different pages, as part of "ITEM 1," under the general heading entitled, "THE INSURED AND MAILING ADDRESS." Thus both may be said to be mailing addresses. Similarly, both the Drake Road and Electric Avenue addresses also may be said to be location addresses. The Electric Avenue address is listed as "OTHER WORKPLACE[] NOT SHOWN ABOVE," thus implying that both it and the previously designated Drake Road address are workplace addresses. Moreover, the Electric Avenue address is described as an "ADDNL" location — "LOCATION NUMBER 002." Inferentially, the Drake Road address is location number one.[12]

Because the purposes for which the two addresses were listed in the policy cannot meaningfully be differentiated, the insurer, in effect, possessed two "last addresses" for Dan's Paving. That being so, when the insurer elected to send notice of cancellation only to the Drake Road address and later learned that this address no longer was viable, we think it then was required to send another notice to the alternative "last address" in its records.

The insurer expresses concern about potential situations where many addresses are listed in a policy. We think, however, that it is not an unreasonable application of the statute to require that, if the parties' agreement does not clearly and unambiguously identify the place where communications are to be sent to the insured, then the insurer must send another notice of cancellation if it learns that an earlier attempt at notice was ineffective, and there is another plausible mailing address contained in its records.

[11]Again, we note that the record does not contain a complete copy of the policy.

[12]As previously noted, there was conflicting testimony at the hearing below, unresolved by the administrative judge, concerning discussions between McGane and the agent about the mailing address for Dan's Paving. See note 3, *supra.*

Such an approach is in keeping with the statute's apparent purpose, as illustrated by the various alternative notification methods set out in its provisions. The statute plainly reflects the Legislature's appreciation of the serious consequences that may flow from the cancellation of an insurance policy. Even though the statute does not go so far as to require actual receipt by the insured as a condition of cancellation, the statute's manifest intent is to cause the insurer to make reasonable efforts to communicate to the insured that the protection afforded by the policy is about to be terminated.

In a case involving the attempted cancellation of a workers' compensation policy, it is particularly important to effectuate the statute's purpose, because of the essential role that insurance plays in the compensation process. See generally 9 Larson, Workers' Compensation Law § 150.03, at 150-17 (2006). Given the ramifications of cancellation upon the employer, the employees, the contributors to the Trust Fund, and the public at large, it is not too much to insist upon conscientious compliance with the statute. See *Armstrong's Case*, 47 Mass. App. Ct. 693 (1999) (strictly construing cancellation requirements applicable to assigned risk policies).

*Conclusion.* The decision of the board ordering that the insurer is liable under its policy for benefits owed to the employee is affirmed.

*So ordered.*