NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-1483                                          Appeals Court
19-P-1484


MIGUEL ESPINAL'S CASE (and a companion case[1]).


Nos. 19-P-1483 & 19-P-1484.

Suffolk.     May 20, 2020. - July 29, 2020.

Present:  Green, C.J., Wolohojian, & Blake, JJ.


Workers' Compensation Act, Insurer, Cancellation of insurance,
     Notice, Findings by administrative judge, Decision of
     Industrial Accident Reviewing Board.  Insurance, Workers'
     compensation insurance, Assigned risk, Cancellation,
     Notice.  Notice, Cancellation of insurance.  Administrative
     Law, Agency's interpretation of statute.  Mail.



     Appeal from decisions of the Industrial Accident Reviewing
Board.


     Garrett Harris for ACE American Insurance Company.
     Robert S. Martin for Great Divide Insurance Company.
     Angel C. Melendez, for Miguel Espinal & another, was
present but did not argue.


     GREEN, C.J.  Under G. L. c. 152, § 65B, an insurer that

wishes to cancel an assigned risk workers' compensation

_____

     [1] Martin Herrera's Case.

insurance policy is required to give notice to the rating organization and the insured employer, and no such notice of cancellation shall become effective until after the employer is given the opportunity to file objections with the Department of Industrial Accidents (department), within ten days after receipt of notice of cancellation. These two appeals present the question whether an insurer is obliged to prove receipt of such notice, or whether the insurer may instead give notice to the insured by first class mail (as prescribed by G. L. c. 175, § 187C), and rely on the rebuttable presumption of receipt furnished by the so-called "mailbox rule." See, e.g., Eveland v. Lawson, 240 Mass. 99, 103 (1921); Mass. R. A. P. 14 (c), 365 Mass. 859 (1974).[2] An administrative judge concluded that the insurer (here, ACE American Insurance Company [Ace]) was required to prove receipt of notice by the employer and, on Ace's appeal, the department's reviewing board affirmed. We vacate the decision and remand for further proceedings.

Background. The employees, Miguel Espinal and Martin Herrera, were injured on September 15, 2016, while working for demolition contractor Cruz Abatement & Contracting Services LLC (Cruz). Cruz was a subcontractor; the general contractor on the

---

[2] See now Mass. R. A. P. 14 (c), as appearing in 481 Mass. 1626 (2019).

project was Moran Environmental Recovery (Moran). Moran was insured by Great Divide Insurance Company (Great Divide).

After a previous workers' compensation policy held by Cruz with a different insurer was cancelled for nonpayment, effective as of February 26, 2015, Cruz applied to the Massachusetts Workers' Compensation Rating and Inspection Bureau (rating bureau, also known as the assigned risk pool) for an assigned risk workers' compensation insurance policy. The rating bureau assigned the risk to Ace. After issuance, and cancellation for nonpayment, of two policies by Ace, on or about February 26, 2016, Cruz again applied to the rating bureau for an assigned risk workers' compensation policy, and the rating bureau again assigned the risk to Ace. Ace issued a policy to Cruz, to be effective from February 26, 2016, to February 26, 2017.

In its application, Cruz listed its address as 60 Island St., Suite 211, Lawrence, MA 01840. On March 18, 2016, Travelers Indemnity Company (Travelers), as servicer for Ace, mailed an invoice for the premium due for the new policy.[3] Cruz did not pay either the total balance or the minimum payment required in the invoice to keep the policy in force. On April 18, 2016, Travelers sent to Cruz a notice of cancellation, by

---

[3] The invoice showed a balance due of $20,204, after application of a deposit of $7,073 made with the application, with a minimum payment amount of $6,565.50.

first class mail, postage prepaid, addressed to the address listed in Cruz's application and policy, and listing an effective date of cancellation of May 8, 2016.[4]  When it mailed the notice of cancellation to Cruz, Travelers obtained a stamped certificate of mailing receipt from the United States Postal Service, showing Cruz's name and address.  On April 22, 2016, Cruz was issued a certificate of liability insurance stating that the policy was "canceled effective 05-08-2016."[5]

The injured employees filed claims against Ace (their employer's insurer) and Great Divide (Moran's insurer).  An administrative judge consolidated the claims, and ordered Great Divide to pay benefits under G. L. c. 152, § 34, to both employees; the judge denied the employees' claims against Ace.  Great Divide and the employees appealed and, after two days of hearing, the judge issued orders concluding that Ace had not effectively canceled the policy it had issued to Cruz.  Accordingly, the judge concluded that Ace was obliged for payment of any remaining benefits to the employees, and to

---

[4] Travelers also mailed a notice of cancellation of Cruz's policy to the rating bureau.

[5] Following cancellation of the policy, an audit revealed that Cruz owed an additional premium in the amount of $3,469 for the period in which the policy was in force before cancellation. Travelers mailed to Cruz a premium adjustment notice on July 8, 2016, and Cruz paid the additional amount on August 16, 2016.

reimburse Great Divide for the payments it previously had made. Ace appealed the decisions of the administrative judge to the reviewing board, which summarily affirmed. These appeals followed.[6]

Discussion. Central to the decision of the administrative judge is his interpretation of G. L. c. 152, § 65B, to require that any notice of cancellation concerning an assigned risk workers' compensation insurance policy must be sent by certified mail. That interpretation appears to be consistent with the reviewing board's long established practice. See, e.g., Pillman's Case, 69 Mass. App. Ct. 178, 181 n.6 (2007) (describing reviewing board's practice); Dembitzski v. Metro Flooring, Inc., 13 Mass. Workers' Comp. Rep. 348 (1999).

"'[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be

---

[6] The only issue on appeal is which insurance company -- Ace or Great Divide -- is the appropriate insurer on the employees' claims. The parties make no argument on appeal regarding the administrative judge's determinations on the merits of the employees' claims, the preservation of their rights under G. L. c. 152, § 36, the awards to them under G. L. c. 152, §§ 13, 30, and 34, or the awards of attorney's fees. Accordingly, any such arguments are waived.

accomplished, to the end that the purpose of its framers may be effectuated.' Scheffler's Case, 419 Mass. 251, 255 (1994), quoting from Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513 (1975). '[T]he statutory language itself is the principal source of insight into the legislative purpose.' Scheffler's Case, supra, quoting from Hoffman v. Howmedica, Inc., 373 Mass. 32, 37 (1977). 'The language of the statute is not to be enlarged or limited by construction unless its object and plain meaning require it.' Gateley's Case, 415 Mass. 397, 399 (1993). 'The interpretation of a statute by the agency charged with primary responsibility for administering it is entitled to substantial deference.' Ibid. However, '[a]n incorrect interpretation of a statute by an administrative agency is not entitled to deference.' Kszepka's Case, 408 Mass. 843, 847 (1990)." Murphy's Case, 53 Mass. App. Ct. 708, 713 (2002).

As a general matter, notices of insurance cancellation are governed by G. L. c. 175, § 187C, the relevant provisions of which are set out in the margin.[7] By its terms, § 187C

---

[7] General Laws c. 175, § 187C, provides as follows:

"A company issuing any policy of insurance which is subject to cancellation by the company shall effect cancellation by serving the notice thereof provided by the policy and by paying or tendering, except as provided in this and the following section, the full return premium due thereunder in accordance with its terms without any deductions. Such

authorizes notice by first class mail, without requiring proof

of receipt of notice by the insured.  According to the reviewing

notice and return premium, if any, shall be delivered in
hand to the named insured, or be left at his last address
as shown by the company's records or, if its records
contain no such address, at his last business, residence or
other address known to the company, or be forwarded to said
address by first class mail, postage prepaid, and a notice
left or forwarded, as aforesaid, shall be deemed a
sufficient notice.  No written notice of cancellation shall
be deemed effective when mailed by the company unless the
company obtains a certificate of mailing receipt from the
United States Postal Service showing the name and address
of the insured stated in the policy.  A check of the
company or its duly authorized agent shall be deemed a
sufficient tender.  The affidavit of any officer, agent or
employee of the company, duly authorized for that purpose,
that such notice has been served and such return premium,
if any, has been paid or tendered, as provided in this
section, shall be prima facie evidence that cancellation
has been duly effected.

"If a policy is made payable to a mortgagee or any person
other than the insured, notice shall be given as above
provided to the payee as well as to the insured.

"Policies subject to cancellation by the insured upon
giving notice to the company may be cancelled by serving
such notice in the manner herein provided upon the company
or upon its agent who issued the policy.

"Whoever knowingly and wilfully makes a false affidavit
under this section shall be punished by a fine of not less
than one hundred nor more than one thousand dollars or by
imprisonment for not more than one year.

"This section shall not apply to nor be deemed to prevent
the termination of any policy by mutual consent of the
parties, nor shall it require the payment or tender of a
return premium upon the cancellation of a policy which
provides for the payment of a return premium when
ascertained or upon demand after cancellation."

board, however, the general provisions of § 187C must be understood by reference to the more specific provisions of G. L. c. 152, § 65B, pertaining to assigned risk policies.[8]  Because § 65B affords the insured employer an opportunity to file objections with the department's commissioner within ten days after receipt of notice of cancellation, the reviewing board reasons that, to be effective, any notice of cancellation must include proof of receipt, and accordingly must be sent by certified mail, return receipt requested.  We believe the board reads into the statute a requirement the statute itself does not impose.

---

[8] General Laws c. 152, § 65B, provides as follows:

"If, after the issuance of a policy under section sixty-five A, it shall appear that the employer to whom the policy was issued is not or has ceased to be entitled to such insurance, the insurer may cancel or otherwise terminate such policy in the manner provided in this chapter; provided, however, that any insurer desiring to cancel or otherwise terminate such a policy shall give notice in writing to the rating organization and the insurer [sic] of its desire to cancel or terminate the same; and provided further, that if the reason for cancellation is for nonpayment of premium, if the insurer receives the amount of premium due on or before the effective date of cancellation, the assigned carrier shall issue an accurate renewal policy.  Such cancellation or terminations shall be effective unless the employer, within ten days after the receipt of such notice, files with the department's office of insurance objections thereof, and, if such objections are filed, the commissioner, or his designee shall hear and decide the case within a reasonable time thereafter.  Further appeal of the decision of the department may be taken to the superior court for the county of Suffolk."

In addition to the principles of statutory construction recited at the beginning of our discussion, we observe that when enacting a statute the Legislature is presumed to be aware of preexisting common law as established by decisions of the Supreme Judicial Court.  See International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 854 (1983).  The "mailbox rule" was well established at the time § 65B was enacted in 1991, as part of a comprehensive reform of the Massachusetts workers' compensation statute.  See Eveland, 240 Mass. at 103.  Accordingly, we presume the Legislature intended the mailbox rule to guide the question of "receipt" of notice when it incorporated that term into § 65B.  Moreover, on other occasions when the Legislature intended to impose a requirement for notice by certified mail, return receipt requested, it has done so explicitly.  See, e.g., G. L. c. 151A, § 15; c. 175, § 162T (d) (1); c. 183A, § 6 (c); c. 184, § 15 (b); c. 254, § 2B.

Contrary to the contention of Great Divide and the employees, this court has not previously endorsed the reviewing board's requirement of notice by certified mail for cancellation of an assigned risk policy.  The three cases cited by Great Divide did not involve the question presented in the present cases, and none conducted an analysis of the question.  In Armstrong's Case, 47 Mass. App. Ct. 693, 696 (1999), the insurer sent a notice of cancellation to the wrong address, and it was

returned unclaimed. The insurer thereafter did not attempt to send a new notice to the correct address, even though the employer had supplied a new address in the interim. In Cummings's Case, 52 Mass. App. Ct. 444, 450 (2001), the insurer's attempted cancellation was ineffective because it failed to send notice to the rating bureau, as required by the statute. And in Pillman's Case, 69 Mass. App. Ct. at 181 n.6, we merely observed the reviewing board's practice, without further comment, in a case that did not involve an assigned risk policy.

Conclusion. Because G. L. c. 152, § 65B, does not require the insurer to send notice of cancellation by certified mail, return receipt requested, and allows such an insurer to rely, at least in the first instance, on a certification that it mailed the notice by first class mail to the insured's address, the administrative judge and reviewing board incorrectly concluded that Ace's notice of cancellation was ineffective. Accordingly, so much of the decision of the reviewing board as determined that Ace was the responsible insurer on the employees' claims is vacated. Because the administrative judge never considered or reached the question whether Ace's prima facie evidence of delivery might be rebutted, we remand the matter to the reviewing board for further proceedings consistent with this

opinion.  In all other respects, the decision of the reviewing board is affirmed.[9]

<u>So ordered</u>.

---

[9] The employees' request for appellate attorney's fees is denied.  See G. L. c. 152, § 12A.