NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-798                                        Appeals Court

    MERCHANTS INSURANCE GROUP  vs.  KEVIN SPICER[1] & others.[2]


                        No. 14-P-798.

      Suffolk.     March 4, 2015. - September 9, 2015.

           Present:  Cohen, Hanlon, & Sullivan, JJ.

Insurance, Workers' compensation insurance.  Workers'
     Compensation Act, Coverage, Jurisdiction of court,
     Jurisdiction of Industrial Accident Board.  Jurisdiction,
     Superior Court, Administrative matter.  Administrative Law,
     Exhaustion of remedies.  Practice, Civil, Declaratory
     proceeding.


     Civil action commenced in the Superior Court Department on
June 19, 2012.

     The case was heard by Elizabeth M. Fahey, J., on a motion
for relief from judgment.


     Darrel Mook (Patricia B. Gary with him) for the plaintiff.
     Douglas S. Martland for the intervener.


     COHEN, J.  The central question presented in this appeal is

whether an insurer may bring an action in Superior Court to

_____

          [1] Doing business as Uptown Landscaping.

          [2] Joel Estaban Perez; Workers' Compensation Trust Fund,
intervener.

retroactively void a workers' compensation policy while an injured employee's claim under that policy is pending in the Department of Industrial Accidents (DIA). The plaintiff, Merchants Insurance Group (Merchants), claiming fraud in the inducement, initiated such an action, and, there being no opposition from the insured employer or the injured employee, secured a declaratory judgment in its favor. Subsequently, however, a judge of the Superior Court reopened the case at the request of the employee and the Workers' Compensation Trust Fund (Fund)[3] and dismissed Merchants' complaint, without prejudice, for lack of subject matter jurisdiction. Upon review of Merchants' appeal from the judgment of dismissal, we conclude that the judge correctly ruled that its claim for rescission of the workers' compensation policy was subject to the doctrine of exhaustion of administrative remedies, and could not be pursued in the Superior Court. For this and other reasons explained below, we affirm the judgment of dismissal.

Background. On December 30, 2011, Joel Estaban Perez was seriously injured while working for Kevin Spicer, doing business

---

[3] Established by St. 1985, c. 572, § 55, the Fund "provide[s], among other things, a source of payment for an employee who suffers a work-related injury while working for an employer who does not have workers' compensation insurance in violation" of G. L. c. 152, § 65(2)(e). Sellers's Case, 452 Mass. 804, 804 n.2 (2008). All employers in the Commonwealth that are subject to the workers' compensation act must contribute to the Fund. Id. at 805 & n.5.

as Uptown Landscaping (Spicer).[4]  Perez sought workers'
compensation benefits under a policy issued by Merchants to
Spicer, and Merchants contested the claim.[5]  After an informal
conference, a DIA administrative judge ordered Merchants to pay
Perez weekly temporary total incapacity benefits, pursuant to
G. L. c. 152, § 34, and medical benefits, pursuant to G. L.
c. 152, §§ 13, 30, pending an evidentiary hearing on the merits.
Both parties appealed the interim conference order and requested
a formal hearing pursuant to G. L. c. 152, § 11.

In June, 2012, while Perez's DIA case was awaiting the
formal hearing, Merchants successfully moved to join the Fund as
a party to the DIA case.  At about the same time, Merchants also
filed a complaint in Superior Court naming Spicer and Perez as
defendants.  In that complaint, Merchants sought rescission of
two insurance policies (a workers' compensation policy and a
general liability policy) that it had issued to Spicer, on the
ground that Spicer had made material misrepresentations in
applying for the policies.  Merchants also sought a judgment
declaring that the policies were void ab initio and that it had

---

[4] Perez's right (major) hand was dismembered by a log-splitting machine.  Perez represented in the Superior Court, and it is not disputed, that, by November, 2012, his medical bills had exceeded $700,000, and his treatment was ongoing.

[5] In its "Notification of Denial," Merchants asserted that Perez was an independent contractor and not a covered "employee."

no duty to defend or indemnify Spicer in connection with Perez's pending claim for workers' compensation benefits. As against Spicer, Merchants also sought damages in the amount of any payments it had been required to make to Perez under the workers' compensation policy thus far.

Neither Spicer nor Perez put up any resistance. Spicer never appeared in the action, and on June 28, 2013, a default judgment entered against him along the lines requested by Merchants.[6] Perez answered Merchants' complaint but did not oppose its motion for summary judgment. On August 23, 2013, a judgment entered against Perez, declaring that both of the policies issued by Merchants to Spicer were void ab initio and rescinded, and that Merchants had no obligation to defend, indemnify, or pay any sums on account of any claims or actions arising out of Perez's injuries, including the pending DIA case. Because the Superior Court case was never actively litigated, at no time was there any determination that Spicer, in fact, had made misrepresentations to Merchants, or that any such misrepresentations met the criteria necessary to defeat or avoid

---

[6] The judgment rescinded and declared void ab initio both the general liability and workers' compensation policies, and awarded Merchants $55,549.26 for payments made by it through September 28, 2012, for legal fees, medical payments, and indemnity payments arising from Perez's workers' compensation claim.

Merchants' obligations under the policies.  See G. L. c. 175,

§ 186(a).[7]

     With the declaratory judgment in hand, Merchants went

before the administrative judge assigned to the Perez matter and

moved that it be dismissed from the DIA case.  The

administrative judge denied the motion[8] and scheduled a G. L.

c. 152, § 11, formal hearing for November 4, 2013.  Merchants

then filed a second Superior Court action, requesting that the

---

     [7] General Laws c. 175, § 186(a), as appearing in St. 2008,
c. 376, § 1, provides: "No oral or written misrepresentation or
warranty made in the negotiation of a policy of insurance by the
insured or in his behalf shall be deemed material or defeat or
avoid the policy or prevent its attaching unless such
misrepresentation or warranty is made with actual intent to
deceive, or unless the matter misrepresented or made a warranty
increased the risk of loss."  Under this statute, "a
misrepresentation in an application for insurance is material,
and, thus, will enable the insurer to avoid the policy, if it is
made with actual intent or if it increases the risk of loss.  A
material fact, measured by an objective standard, is one which
would 'naturally influence the judgment of [an] underwriter in
making the contract at all, or in estimating the degree and
character of the risk, or in fixing the rate of the premium.'
The [insurer] has the burden of proof on this issue." A.W.
Chesterton Co. v. Massachusetts Insurers Insolvency Fund, 445
Mass. 502, 513 (2005), quoting from Employers' Liab. Assur.
Corp. v. Vella, 366 Mass. 651, 655 (1975) (citations omitted).

     [8] The administrative judge offered four reasons for denying
Merchants' motion: (1) the DIA and not the Superior Court had
exclusive jurisdiction to decide the coverage issue; (2) there
was no privity between the parties in the two actions, because
Merchants had failed to name the Fund as a party even though it
might well be liable if there were no coverage; (3) Merchants
had failed to terminate the policy in the manner required by
G. L. c. 152; and (4) as a matter of public policy, insurers
should not be allowed to circumvent DIA proceedings by going to
the Superior Court.

DIA and the administrative judge be enjoined from going forward with "any proceedings" against Merchants in Perez's workers' compensation case.  In response, Perez filed a motion in the first Superior Court action, seeking relief from the declaratory judgment in favor of Merchants, on the ground that the court had been without jurisdiction to entertain Merchants' complaint. See Mass.R.Civ.P. 60(b)(4), 365 Mass. 827 (1974).

Informed of this development, the judge in the second Superior Court action granted a temporary restraining order halting the DIA proceedings until such time as Perez's motion for relief from judgment in the first action was determined.[9] Meanwhile, in the first action, the Fund sought and was granted leave to intervene pursuant to Mass.R.Civ.P. 24, 365 Mass. 769 (1974), and proceeded to submit filings in support of Perez's motion for relief from judgment.  Merchants responded with an opposition, essentially arguing that the Superior Court did have jurisdiction and that relief under rule 60(b) would be inappropriate.

At the hearing on the motion for relief from judgment, Perez and the Fund requested that the case be dismissed because Merchants had failed to exhaust its administrative remedies,

---

[9] We have consulted the current docket in the second Superior Court case, see Home Depot v. Kardas, 81 Mass. App. Ct. 27, 28 (2011), and it appears that the temporary restraining order is still in place.

and, hence, the court lacked subject matter jurisdiction to adjudicate its claims.[10]  The motion judge agreed; she vacated prior orders and judgments in the case and ordered the entry of a new, final judgment dismissing Merchants' complaint without prejudice.

Discussion.  We review the question of jurisdiction de novo.  See Buccaneer Dev., Inc. v. Zoning Bd. of Appeals of Lenox, 83 Mass. App. Ct. 40, 41 (2012).  In the present circumstances, the question can be further narrowed to whether Merchants was required to exhaust its administrative remedies at the DIA.

---

[10] Perez's counsel candidly told the judge that he had not understood that there was a jurisdictional problem prior to the entry of the judgment against his client, and that he was under the impression that rescission would not harm Perez, because he would receive his benefits from the Fund.  However, as the Fund's attorney explained, the Fund, which had not been a party to the court case, intended to contest its liability in the DIA proceedings, as "it [was] supposed to do."  Thus, if the administrative judge were to determine that the Fund was not liable because Merchants' policy was valid and in effect at the time of the injury, Perez would be left without recourse, unless the Superior Court judgment were vacated.  The general counsel of the DIA also was present at the hearing and answered questions from the judge.  His position was that the DIA is vested with the exclusive authority to decide whether a claim is covered under a workers' compensation policy, including whether the employer obtained the policy by means of misrepresentations, as alleged by Merchants in this case.  In the DIA's view, that question is a "subissue" of the overarching issue of "liability" of the insurer "to pay the compensation due," and would be for the administrative judge and then the reviewing board to decide.

The exhaustion rule (or doctrine) has long been a part of our system of jurisprudence.  See Saint Luke's Hosp. v. Labor Relations Commn., 320 Mass. 467, 469 (1946); East Chop Tennis Club v. Massachusetts Commn. Against Discrimination, 364 Mass. 444, 448-452 (1973).  Like its closely-related counterpart, the primary jurisdiction doctrine, the exhaustion rule promotes "proper relationships and sensible coordination of work between courts and administrative agencies that are charged with regulatory responsibilities."  Massachusetts Correction Officers Federated Union v. County of Bristol, 64 Mass. App. Ct. 461, 467 n.9 (2005).  See Lumbermans Mut. Cas. Co. v. Workers' Compensation Trust Fund, 88  Mass. App. Ct. ____, ____ (2015); Stavely v. Lowell, 71 Mass. App. Ct. 400, 403 n.7 (2008).

Application of the exhaustion rule to any particular case requires not only an understanding of its purposes, but also "of the particular administrative scheme involved."  McKart v. United States, 395 U.S. 185, 193 (1969).  We must therefore take into consideration the objectives of G. L. c. 152, the workers' compensation act (act), and the manner in which it is administered.

1.  General Laws c. 152.  The act was passed into law in 1911, as a humanitarian measure designed to provide prompt and adequate compensation and medical benefits to an employee (and the employee's dependents) in the event of injury or death

occasioned by a work-related accident. See Young v. Duncan, 218 Mass. 346, 349 (1914); Neff v. Commissioner of the Dept. of Indus. Accs., 421 Mass. 70, 73 (1995); Spaniol's Case, 466 Mass. 102, 106-107 (2013). Motivated by public dissatisfaction with "inadequate" common-law remedies, the Legislature attached "new incidents" to the relationship of employer and employee, enforced by a sui generis process analogous to that of equity procedure, to promote the goal of assuring prompt and adequate assistance to injured workers (and their dependents). Opinion of the Justices, 309 Mass. 562, 568 (1941). It also established a scheme of interlinked rights, obligations, and remedies "all its own, not previously known to the common or statutory law." Ahmed's Case, 278 Mass. 180, 184 (1932). As a remedial statute, the act is to be afforded a broad interpretation, viewed in light of its purposes and in aid of its "beneficent design." Neff v. Commissioner of the Dept. of Indus. Accs., supra (quotation omitted).

a. Adjudicatory process. There are four procedural steps in the adjudicatory process of a contested workers' compensation claim. The first step is an informal conciliation proceeding, see G. L. c. 152, § 10; if the parties cannot reach a voluntary accord, the second step is an informal conference before an administrative judge, id. at §§ 10, 10A. The third step is a formal hearing before an administrative judge, see id. at § 11;

and the fourth is an appeal to the reviewing board, see id. at
§ 11C.  See generally Murphy v. Commissioner of the Dept. of
Indus. Accs., 415 Mass. 218, 223-225 (1993); Neff v.
Commissioner of the Dept. of Indus. Accs., supra at 74; Murphy's
Case, 53 Mass. App. Ct. 708, 712 (2002).

Judicial review of a final decision of the reviewing board
is had in this court, not the Superior Court.  G. L. c. 152,
§ 12.  The Superior Court is a proper forum only if a party
seeks to enforce an order of the reviewing board -- a situation
not presented here.  Ibid.  In this case, Perez and Merchants
reached only the conference stage at the DIA, which resulted in
an order for temporary benefits.  Thus, the administrative
proceedings were far from exhausted when Merchants elected to
file its complaint in court.

b.  DIA's jurisdiction over coverage disputes.  If a
dispute over a claim is based on issues of insurance coverage,
"the DIA has full power to decide such questions of coverage"
and the "'parties have no right to try out the issue in a
separate proceeding in court.'"  Lee v. International Data
Group, 55 Mass. App. Ct. 110, 115-116 (2002), quoting from
Locke, Workmen's Compensation § 131, at 136 (2d ed. 1981).  See
Nason, Koziol, & Wall, Workers' Compensation § 7:13, at 154 (3d
ed. 2003).  Among the coverage issues commonly addressed in the
DIA are those relating to the requirements of G. L. c. 152, § 63

(for voluntarily issued policies), and G. L. c. 152, § 65B (for assigned risk policies), which regulate how an insurer may "cancel or otherwise terminate" its policy. See Frost v. David C. Wells Ins. Agency, Inc., 14 Mass. App. Ct. 305, 306-309 (1982); Armstrong's Case, 47 Mass. App. Ct. 693, 696 (1999); Cummings's Case, 52 Mass. App. Ct. 444, 447-450 (2001); Pillman's Case, 69 Mass. App. Ct. 178, 181-185 (2007). As implicitly recognized by this court in Cummings's Case, supra at 448-450, and explicitly recognized by the reviewing board in Sullivan's Case, 20 Mass. Workers' Comp. Rep. 207, 211 (2006), rescission is embraced by the phrase "otherwise terminate," and, therefore, the propriety and availability of rescission is a matter for the DIA to adjudicate.[11]

Merchants nevertheless contends, based on Century Indem. Co. v. Jameson, 333 Mass. 503 (1956), that the Superior Court had jurisdiction over its request for rescission. In Century, a workers' compensation insurer sought and obtained a declaration

---

[11] Both Cummings's Case and Sullivan's Case concerned assigned risk policies, as to which G. L. c. 152, § 65B, regulates cancellation and rescission. Because the present case concerns a voluntary policy, the relevant section is § 63; however, the operative language ("cancel[] or . . . otherwise terminate[]") is identical. "Where the Legislature uses the same words in several sections which concern the same subject matter, the words 'must be presumed to have been used with the same meaning in each section.'" Commonwealth v. Wynton W., 459 Mass. 745, 747 (2011), quoting from Insurance Rating Bd. v. Commissioner of Ins., 356 Mass. 184, 188-189 (1969).

that a workers' compensation policy was voidable at its option where the insured had applied for the policy without disclosing material facts within his knowledge. Id. at 504-505. Significantly, however, Century predated the amendment of both §§ 63 and 65B, to include within the act specific provisions governing the termination of workers' compensation policies.[12] For that reason, Century is not controlling.

2. Exhaustion. Massachusetts courts have long adhered to the rule that "[i]n the absence of a statutory directive to the contrary, the administrative remedies should be exhausted before resort to the courts." East Chop Tennis Club v. Massachusetts Commn. Against Discrimination, 364 Mass. at 448, quoting from Gordon v. Hardware Mut. Cas. Co., 361 Mass. 582, 587 (1972). Neither of the statutes cited by Merchants as a basis for Superior Court jurisdiction, G. L. c. 231A and G. L. c. 175,

---

[12] At the time Century was decided, § 63 had no language pertaining to cancellation or termination. See G. L. c. 152, § 63, as amended by St. 1953, c. 314, § 6. It was not until 1973 that the Legislature added, inter alia, the sentence that reads: "Such insurance shall not be cancelled or shall not be otherwise terminated" until notification to the proper body (at one time the DIA, and, later, the rating organization) is given. St. 1973, c. 403. While a version of § 65B existed before Century was decided, it referred only to cancellation; it was not until 1991 that this section was amended to include the broader, "cancel or otherwise terminate" language analogous to the language in § 63. See St. 1991, c. 398, § 90A.

§ 186(a), contains any such directive,[13] and it is undisputed that Merchants did not exhaust its administrative remedies before resorting to the courts.

The policies underlying the exhaustion doctrine are "particularly applicable in the case of the administration of the Work[ers'] Compensation Act." Assuncao's Case, 372 Mass. 6, 9 (1977). "By permitting an agency to apply its expertise to the statutory scheme which it is charged to enforce, courts preserve the integrity of the administrative process while sparing the judiciary the burden of reviewing administrative proceedings in a piecemeal fashion." Murphy v. Administrator of Div. of Personnel Admin., 377 Mass. 217, 220 (1979), citing Assuncao's Case, supra at 8-9. Those policies, as well as the policies generally underlying the workers' compensation scheme, would be undermined if an insurer were able to circumvent the DIA process by litigating a claim for rescission in court while a claim under the policy is pending in the DIA. As this case well illustrates, bypassing the administrative process has the

---

[13] Merchants takes the position that by enacting G. L. c. 175, § 186, the Legislature "expressly authorized the Superior Court to rescind insurance policies for fraud in the inducement." However, the statute does not confer jurisdiction in any particular forum; it establishes the legal standards that must be met for an insurer to defeat or avoid liability under its policy because of a misrepresentation or warranty made by the insured. See note 7, supra.

potential to impair the rights of both the injured employee and the Fund.

Merchants' contention that the administrative remedies available under the act are not the same as those available in a declaratory judgment action is unavailing. "A proceeding for declaratory relief in itself does not operate to suspend the ordinary requirement that a plaintiff exhaust [its] administrative remedies before seeking judicial relief." East Chop Tennis Club v. Massachusetts Commn. Against Discrimination, supra at 450. Furthermore, "[t]he question 'is not whether the alternative [administrative] remedy is in all respects as prompt and as broad' but whether it is 'inadequate.'" Gordon v. Hardware Mut. Cas. Co., 361 Mass. at 586, quoting from Jordan Marsh Co. v. Labor Relations Commn., 312 Mass. 597, 601-602 (1942).

Here, the remedies available to Merchants at the DIA were not inadequate. It was entitled to argue in the workers' compensation case that it had no obligation to pay benefits to Perez because the policy had been obtained by Spicer's fraud. If the administrative judge ruled otherwise, Merchants would have a right of appeal to the reviewing board, and then, if need be, to this court. It also was entitled to terminate the policy in accordance with the statutory procedures applicable to policies written on a voluntary basis, i.e., G. L. c. 152, § 63,

and G. L. c. 175, § 187C.  See Pillman's Case, 69 Mass. App. Ct. at 181 n.6.  What it could not do was to file a Superior Court case as a means to avoid the administrative process.

3.  Other issues.  We comment briefly on the parties' remaining arguments.

a.  Because we rest our decision on the exhaustion rule, we need not decide whether the Superior Court lacked jurisdiction on the alternative ground that the Fund was a necessary party to any action seeking a declaration that Merchants' workers' compensation policy was void.  See Service Employees Intl. Union, Local 509 v. Department of Mental Health, 469 Mass. 323, 338 (2014).

b.  The judge did not abuse her broad discretion in allowing the Fund's motion to intervene.  See Cruz Mgmt. Co. v. Thomas, 417 Mass. 782, 785 (1994).  "Although motions to intervene after judgment are seldom 'timely,' they may be allowed if the proposed intervener demonstrates a strong justification for intervention after judgment."  McDonnell v. Quirk, 22 Mass. App. Ct. 126, 132 (1986) (citation omitted). Here, the confluence of the jurisdictional defect, Merchants' efforts to extract itself from the DIA proceedings (going so far as to enjoin the DIA from continuing with the case), and the potential prejudice to Perez and the Fund if the Fund were

precluded from being heard constituted ample justification for allowing the Fund to intervene.

c.  The judge did not err in concluding that relief pursuant to rule 60(b)(4) was appropriate, as there was no arguable basis on which the Superior Court had jurisdiction in the circumstances.  Merchants filed its Superior Court case while Perez's DIA claim was pending.  Because the DIA had exclusive jurisdiction to determine Merchants' liability under its policy in conjunction with Perez's pending compensation claim, the Superior Court was without authority to decide whether that policy should be rescinded ab initio as a result of the Spicer's alleged misrepresentations.  In this instance, the Superior Court lacked jurisdiction from the very inception of the case.  Accordingly, O'Dea v. J.A.L., Inc., 30 Mass. App. Ct. 449 (1991), relied upon by Merchants, is distinguishable.

d.  Merchants contends that the judge erred in failing to preserve the judgments insofar as they related to the general liability insurance policy.  So far as the record reveals, however, Merchants did not make this argument in the trial court until it moved for reconsideration of the judge's order allowing Perez's motion for relief from judgment, vacating all substantive orders, and dismissing the complaint.  Merchants was silent as to what, if any, rulings might be salvaged from the case even when the judge requested at the January 31, 2014,

hearing on Perez's motion for relief from judgment that all parties submit their views as to which orders should be vacated.[14]

A motion for reconsideration is not the "appropriate place to raise new arguments inspired by a loss before the motion judge in the first instance." Commonwealth v. Gilday, 409 Mass. 45, 46 n.3 (1991). Accordingly, we review the judge's denial of a motion for reconsideration only for abuse of discretion. See Commissioner of Rev. v. Comcast Corp., 453 Mass. 293, 312-313 (2009), and cases cited. We discern no abuse of discretion here.

Even assuming for the sake of argument that there was no jurisdictional impediment to the Superior Court judge's rescission of the general liability policy while the compensation case was pending, the judge did not abuse her discretion in declining to change the scope of the dismissal order. It would not have been a simple ministerial task for the

---

[14] The judge ordered all parties to file these submissions by February 14, 2014. She also stated that, if Merchants wished to file something further in response, it could do so by February 21. Perhaps misunderstanding her order, Merchants did not file anything by February 14, but later filed proposed findings and rulings on the motion for relief from judgment on February 21. Even then, Merchants did not address the judge's concern. Instead, it reargued its position that the Superior Court had jurisdiction and the judge should not grant any relief to Perez. In the meantime, without benefit of any input from Merchants as to which orders should be vacated, the judge allowed Perez's motion on February 19.

judge to grant Merchants' belated request.  The two policies were not addressed in separate counts of the complaint, and all subsequent pleadings, orders, and forms of judgment submitted by Merchants consistently linked them together without differentiation.  Furthermore, the judge could decide in her discretion that she had adequately protected Merchants' interests by ordering dismissal without prejudice -- leaving Merchants free to file another action in Superior Court seeking relief solely as to the general liability policy.

Conclusion.  For the foregoing reasons, the judgment dismissing the case for lack of jurisdiction is affirmed.

So ordered.