MILKEY, J.
*628 While sitting on her parked motor scooter on a public sidewalk in the Roxbury section of Boston, Detra Holloway *629 was the victim of a drive-by shooting. She became paralyzed from her injuries and eventually died from complications related to them. Those responsible for the shooting were never identified or apprehended.
Holloway brought negligence claims against Madison Trinity Limited Partnership and Trinity Management, LLC, the entities that operated the housing development adjacent to the site of the shooting. She claimed that the defendants caused her injuries by failing both to provide adequate security in the area and to warn her about the dangers there. On summary judgment, a Superior Court judge ruled in the defendants' favor, agreeing that, as a matter of law, they owed no such duties to the decedent in the circumstances of this case. We affirm.
Background.[3] The history of Orchard Gardens. The shooting took place on a public road within the housing development known as Orchard Gardens. The history of that development plays a prominent role in the plaintiff's claims, and we therefore begin by briefly recounting it.
The area in question was once the site of Orchard Park, a public housing project owned by the Boston Housing Authority (BHA). Orchard Park was plagued with widespread drug trafficking and violence, and it became "synonymous with crime." In an effort to ameliorate this, the BHA in 1996 leased the property to defendant Madison Trinity Limited Partnership, with a separate entity, defendant Trinity Management, LLC, created to operate the development (collectively, Trinity). Under the lease and related documents, Trinity agreed to undertake a significant redevelopment of Orchard Park, which was renamed Orchard Gardens. Trinity redesigned the development into townhouse-style apartments that had direct access to the sidewalk and added more green spaces. As part of the redevelopment plan, *196 new public streets, owned by the city of Boston, were constructed within Orchard Gardens. Among those streets was Wheatley Way.
Despite this overhaul, crime persisted in Orchard Gardens and, in 2001, Trinity decided to hire a private security company to patrol the neighborhood. As part of the security detail, two security officers were assigned to patrol the housing development, particularly in areas where crime was most prevalent, for specified hourly shifts three to seven days per week. The Boston Police *630 Department designated these security officers as "special officers" authorized to make arrests on Orchard Gardens' property. Such arrest authority did not extend to the public streets or sidewalks. Trinity also evidently posted "No Trespassing" signs on the sides of some of its buildings, and installed a surveillance camera near its on-site office.
The shooting. On June 19, 2013, at approximately 11:00 P.M. , the decedent was driving home from a friend's house on her scooter. She decided to go down Wheatley Way as a short cut. Although the decedent had been planning to go straight home, she encountered someone she knew who was standing on the street near the Orchard Gardens townhouse located at 12 Wheatley Way.[4] The decedent stopped to speak with her friend while sitting on her scooter that she parked on the public sidewalk. While she was there, a vehicle drove slowly past the decedent and her friend, and then stopped and backed up towards them. Suddenly, an individual sitting in the backseat "threw the window down and started spraying" gunshots in their direction. A bullet hit the decedent in the right shoulder and severed her spine, causing her to fall from her scooter onto the street. As noted, the decedent eventually died from complications related to her injuries.
Discussion. 1. Standard of review. "We review a grant of summary judgment de novo." Merrimack College v. KPMG LLP, 480 Mass. 614, 619, 108 N.E.3d 430 (2018). "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and 'the moving party is entitled to a judgment as a matter of law.' " Bernstein v. Planning Bd. of Stockbridge, 76 Mass App. Ct. 759, 764-765, 926 N.E.2d 578 (2010), quoting Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624, 626, 536 N.E.2d 1067 (1989). The nonmoving party "cannot rest on his or her pleadings and mere assertions of disputed facts to defeat [a] motion for summary judgment." LaLonde v. Eissner, 405 Mass. 207, 209, 539 N.E.2d 538 (1989).
2. Merits. In order to succeed on her negligence claims, the plaintiff must first establish that the defendants owed the decedent a duty of reasonable care. See Jupin v. Kask, 447 Mass. 141, 146, 849 N.E.2d 829 (2006). "[T]he existence of a duty is a question of law, and is thus an appropriate subject of summary judgment." Id. "That is because such questions are resolved 'by reference to existing social *631 values and customs and appropriate social policy.' " Pantazis v. Mack Trucks, Inc., 92 Mass. App. Ct. 477, 483, 87 N.E.3d 1191 (2017), quoting Jupin, supra at 143, 849 N.E.2d 829.
A property owner generally "owes a common-law duty of reasonable care to all persons lawfully on the premises."
*197 O'Sullivan v. Shaw, 431 Mass. 201, 204, 726 N.E.2d 951 (2000). In appropriate circumstances, such duties can extend to protecting against criminal actions taken there by third parties. See, e.g., Mullins v. Pine Manor College, 389 Mass. 47, 54-55, 449 N.E.2d 331 (1983) (upholding jury verdict against college for claim that it negligently failed to protect student from rape committed on campus by unknown assailant).
A landowner's duty to protect people from criminal or otherwise wrongful acts committed by third parties typically is found only where there is a "special relationship" between the injured party and the landowner. Luoni v. Berube, 431 Mass. 729, 731-732, 729 N.E.2d 1108 (2000), and cases cited. In the case before us, it is undisputed that the decedent was not a tenant of Trinity's housing development. In fact, she had no relationship with Trinity, much less a "special" one.
In addition, at no point during the shooting incident was the decedent on property leased or managed by Trinity. Instead, the decedent was at all relevant times a member of the public using a public way owned by the city of Boston. It is well established that "a landowner or possessor typically is not held to any duty with respect to public highways adjacent to or crossing his land." Davis v. Westwood Group, 420 Mass. 739, 743, 652 N.E.2d 567 (1995), citing Pritchard v. Mabrey, 358 Mass. 137, 140, 260 N.E.2d 712 (1970). Rather, the duty owed by the landowner or possessor is to "exercise reasonable care in the use of his land so as not to injure a traveler on the highway." Davis, supra. The same principles apply to public sidewalks adjacent to a public street. See Halbach v. Normandy Real Estate Partners, 90 Mass. App. Ct. 669, 671-673, 63 N.E.3d 388 (2016), and cases cited. A private property owner has a "negative duty" to refrain from "creating an unsafe condition on the public way adjacent to his property, but no more." Id. at 671, 63 N.E.3d 388. The case before us raises no such claims.[5]
*632 The plaintiff points out that ownership of property is not always a prerequisite to a duty; the right to control land on which an injury occurred can be enough. See Davis, 420 Mass. at 744-745, 652 N.E.2d 567 ("duty of care may arise from the right to control land, even where the person held to such a duty does not own the land in question"). Based on that principle, the plaintiff argues that Trinity exercised "some amount of control over Wheatley Way," and that, at a minimum, there exists a factual dispute over whether they owed the decedent a duty of care there. We are unpersuaded.
A similar argument was made and rejected in Davis. There, the plaintiff was struck by a car while crossing a State highway adjacent to a privately owned racetrack. See id. at 740, 652 N.E.2d 567. The racetrack operated on both sides of the highway, and -- in order to assist its patrons in crossing the busy road -- the racetrack owner had arranged for a police detail at the crosswalk that spanned the *198 highway. See id. at 743-745, 652 N.E.2d 567. Despite the racetrack owner's active role in trying to make pedestrian use of the highway safer, the Supreme Judicial Court held that, as a matter of law, it was the Commonwealth that had "clear" and "undisputed control" of the highway, and that the racetrack owner owed no duty to provide its patrons safe passage across the public highway. Id. at 745, 652 N.E.2d 567. The court observed that to recognize such a duty would make the boundary of a landowner's liability "nearly impossible to draw." Id. at 744, 652 N.E.2d 567.
The factors that the plaintiff claims "raise a question of [Trinity's] control" over the public sidewalk at Orchard Gardens are no stronger than those at issue in Davis. While the security officers that Trinity hired used Wheatley Way and other public streets to patrol Orchard Gardens, they had no arrest powers there. In fact, as the judge observed, they "had no more authority than any other private citizen when on Wheatley Way." As a matter of law, the city of Boston retained control over Wheatley Way. See id.
The plaintiff also seeks support from the long-recognized principle that a defendant voluntarily may assume a duty of care. See id. at 746, 652 N.E.2d 567, citing Mullins, 389 Mass. at 52, 449 N.E.2d 331. She argues that when Trinity agreed to try to make the area safer, it voluntarily assumed a duty to protect members of the public from foreseeable violent acts committed by third parties within the confines of what could *633 be considered Orchard Gardens.[6] We disagree. As the court in Davis observed, "[t]o impose such a broad duty on [the defendants] would be 'unreasonably onerous' ... because it would make [the defendants] insurer[s] of the safety of travelers and pedestrians on a State-owned and State-controlled highway." Davis, supra at 747, 652 N.E.2d 567 (by hiring police detail at crosswalk, racetrack owner did not assume broader duty of ensuring safe passage).
The plaintiff's claim that Trinity owed a duty to warn the decedent of the dangers within Orchard Gardens fares no better. See Halbach, 90 Mass. App. Ct. at 674, 63 N.E.3d 388 (owner of adjacent property "had no duty ... to ... warn of hazards on the public sidewalk"). In fact, it is not at all clear what sort of warning the plaintiff thinks Trinity ought to have posted about the risks that drive-by shootings or other criminal acts posed to those using public sidewalks or streets in the area. In any event, the plaintiff cannot point to any case that has held that a private party has a duty to warn members of the public about the risks posed by criminal acts that third parties might commit on public ways, even adjacent ones. We decline to recognize such a duty here.
Lastly, we address the principal case on which the plaintiff relies, Cohen v. Elephant Rock Beach Club, Inc. (Elephant Rock ), 63 F. Supp. 3d 130 (D. Mass. 2014). In that case, the plaintiff was injured while jumping off the top of a rock that lay partially submerged in the ocean some 250 feet from the shore. See id. at 133-135. She brought a negligence claim against the private *199 club that had exclusive control of the beach from which she, a guest of a club member, had swum to reach the rock. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 134-135. Although the rock itself lies on land owned by the Commonwealth, the plaintiff alleged that the club exercised sufficient control over access to it as to implicate a duty to warn the club's members and guests of the dangers posed there. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 133-135. On this basis, a Federal District Court judge denied the club's motion for summary judgment. See id. at 142-143.
Putting aside that Elephant Rock has no binding precedential *634 value on us, that case readily is distinguishable. The club there knew that its beach served as a "portal" to the rock. There was evidence in the summary judgment record that the club voluntarily had taken on an active role in encouraging or discouraging its members and guests to use the rock depending on the particular dangers that the club perceived at a given time (based on weather and water conditions). Id. at 133-134, 138. It was in this context that the judge ruled that the club might have a duty to warn those lawfully using its land about the dangers posed by going to the rock. That holding has no bearing on the case before us, in which the plaintiff claims that Trinity had a duty to warn members of the public using a public way about potential dangers they faced there from criminal acts by third parties.
For these reasons, we conclude that the judge properly allowed Trinity's motion for summary judgment[7] and, therefore, we affirm the judgment.
So ordered.

We view the facts in the light most favorable to the plaintiff, the nonmoving party. Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120, 571 N.E.2d 357 (1991).

The decedent herself did not live in Orchard Gardens. The friend did live there, although not at 12 Wheatley Way.

Although the plaintiff argues that, in various respects, Trinity could have done a more effective job making the area more secure, she does not argue that Trinity's providing security made the area less safe. There are suggestions in the plaintiff's brief that the specific layout of the buildings in, and the public streets running through, Orchard Gardens created dangers, and that Trinity played a major role in that design. However, the plaintiff's complaint does not encompass any negligent design claim. We need not reach Trinity's additional argument -- to which the plaintiff did not respond -- that the statute of repose applicable to negligent design claims in any event long since has run. See G. L. c. 260, § 2B.

In support of this argument, the plaintiff points out that -- in a deposition in a different case -- an employee of Trinity drew the outer boundary of Orchard Gardens to include the new public streets constructed there. The fact that, for some purposes, a public street might lie within the geographical boundaries of a private development does not mean the developer thereby has a legal duty to police that street. Nor is it unusual for there to be a public way lying within the boundaries of what otherwise might be considered a private development; indeed, this situation commonly arises in the development of suburban subdivisions where access roads are constructed and then dedicated as public ways.

The judge ruled in Trinity's favor on January 5, 2018, and final judgment entered on January 12, 2018. Subsequently, the plaintiff moved for reconsideration, largely repeating the same arguments she already had made. She also sought to reopen the summary judgment record by adding a deposition transcript produced in a parallel civil case, and a police affidavit submitted in a Federal criminal case. The judge denied both postjudgment motions. With respect to the motion to reopen the summary judgment record, the judge noted that the plaintiff conceded that she was aware of the "new" evidence in November of 2017 (that is, weeks before the judge ruled on the pending motion for summary judgment). With respect to the motion for reconsideration, the judge observed that the plaintiff had "already received a written, reasoned explanation" of the ruling on summary judgment and had failed to meet the standards for reconsideration. See Audubon Hill S. Condominium Ass'n v. Community Ass'n Underwriters of Am., Inc., 82 Mass. App. Ct. 461, 470, 975 N.E.2d 458 (2012). The judge did not abuse his discretion in denying those motions. See Merchants Ins. Group v. Spicer, 88 Mass. App. Ct. 262, 271, 38 N.E.3d 1018 (2015).