NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12857

MARK MENDES'S CASE.

Suffolk.     March 3, 2020. - October 29, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.[1]

Workers' Compensation Act, Jurisdiction of Industrial Accident Board.  Words, "Significant contacts."

Appeal from a decision of the Industrial Accident Reviewing Board.

The Supreme Judicial Court granted an application for direct appellate review.

John M. Sahady for the claimant.
Richard L. Neumeier (John C. White also present) for the insurer.
Kathy Jo Cook, Thomas R. Murphy, Kevin J. Powers, & Patrick M. Groulx, for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

BUDD, J.  The claimant, Mark Mendes, is a Massachusetts

resident who entered into an employment contract, performed much

_____

[1] Chief Justice Gants participated in the deliberation on this case prior to his death.

of the work, and was injured all outside the Commonwealth. After protracted administrative proceedings in the Department of Industrial Accidents (department), his claim for workers' compensation ultimately was denied and dismissed by the department's reviewing board (board), which determined that the department lacked subject matter jurisdiction over the claim. The claimant appealed from that determination to the Appeals Court, and we granted an application for direct appellate review.

We conclude that, given the significant contacts between the claimant's employment and the Commonwealth, the workers' compensation act (act), G. L. c. 152, confers jurisdiction on the department to adjudicate his claim.[2]

Background. 1. Workers' compensation act. Originally passed in 1911, see St. 1911, c. 751, the act was a "response to strong public sentiment that the remedies afforded by actions of tort at common law did not provide adequate protections to workers." Neff v. Commissioner of the Dep't of Indus. Accs., 421 Mass. 70, 73 (1995), citing Young v. Duncan, 218 Mass. 346, 349 (1914). The act provides: "If an employee . . . receives a personal injury arising out of and in the course of his employment . . . in the business affairs or undertakings of his

_____

[2] We acknowledge the amicus brief submitted by the Massachusetts Academy of Trial Attorneys.

employer, and whether within or without the commonwealth, he shall be paid compensation by the insurer or self-insurer" as provided for in the act.  G. L. c. 152, § 26.

"The act was intended to guarantee that workers would receive payment for any workplace injuries they suffered, regardless of fault; in exchange for accepting the statutory remedies, the worker waives any common-law right to compensation for injuries. . . . The workers' compensation scheme provides predictability for both employee and employer, balancing protection for workers with certainty for employers" (quotations and citations omitted).  Benoit v. Boston, 477 Mass. 117, 122 (2017).  It did so by "establish[ing] a scheme of interlinked rights, obligations, and remedies 'all its own, not previously known to the common or statutory law.'"  Merchants Ins. Group v. Spicer, 88 Mass. App. Ct. 262, 267 (2015), quoting Ahmed's Case, 278 Mass. 180, 184 (1932).

Payments to injured workers are made pursuant to insurance policies that employers are required to obtain under the act.[3] See G. L. c. 152, § 25A.  See Awuah v. Coverall N. Am., Inc., 460 Mass. 484, 494 (2011).  Depending on the nature and severity of the injury and the degree of the resulting incapacity, a

---

[3] Alternatively, employers may join a workers' compensation self-insurance group, or license as self-insurer.  See G. L. c. 152, § 25A.

covered employee[4] may be entitled to an array of benefits including compensation for medical bills, lost earnings, and lost earning capacity. See G. L. c. 152, §§ 30, 31, 34, 34A, 35, 36. Where an injured employee's claim for benefits is contested by the insurer, it advances through a series of procedural stages in the department to determine whether the claimant is entitled to benefits, and if so, the type and amounts of those benefits. See generally Murphy v. Commissioner of the Dep't of Indus. Accs., 415 Mass. 218, 223-225 (1993), S.C., 418 Mass. 165 (1994); G. L. c. 152, §§ 10-11C.

Over the years, the Legislature has amended the act to broaden the protections and benefits afforded to injured employees. See, e.g., Sellers's Case, 452 Mass. 804, 812, 814 (2008) (Legislature broadened definition of "average weekly wages," made employer participation in workers' compensation scheme mandatory, and established fund to pay benefits to employees of uninsured employers); Lavoie's Case, 334 Mass. 403, 406-407 (1956) (amendments to G. L. c. 152, § 26, intended to enlarge, not restrict, act's scope). In sum, the act is "a humanitarian measure designed to provide adequate financial

---

[4] An employee has the right to opt out of the workers' compensation scheme and retain the right to sue the employer in tort by making such an intention clear in writing upon hire. See G. L. c. 152, § 24; Wentworth v. Henry C. Becker Custom Bldg. Ltd., 459 Mass. 768, 773 n.6 (2011).

protection to the victims of industrial accidents." LaClair v. Silberline Mfg. Co., 379 Mass. 21, 27 (1979).

2. Factual and procedural history. The material facts, taken from the record, are undisputed. Franklin Logistics, Inc. (employer),[5] a freight transportation trucking company, employed between 800 and 900 tractor-trailer drivers who transported goods across approximately twenty States east of the Mississippi River.

The employer advertised for drivers nationally; the claimant responded to an advertisement the employer placed in a local Massachusetts newspaper. He completed an online application for a position. After screening the claimant's application, the employer invited him to its Pennsylvania headquarters to participate in a three-day orientation program. In January 2009, the claimant entered into an employment contract with the employer at the employer's Pennsylvania headquarters after successfully completing the program.

As a tractor-trailer driver, the claimant picked up trailers loaded with goods and delivered them throughout the northeast and numerous other States. Although the employer did not own cargo terminals in Massachusetts, it used three

---

[5] At the time the claimant filed the claim, Franklin Logistics, Inc., was a wholly-owned subsidiary of Smith Transport Inc. Neither was incorporated in Massachusetts.

facilities belonging to customers in Bondsville, Leominster, and Weymouth where drivers, including the claimant, exchanged empty trailers for trailers loaded with goods to be delivered.

Over the course of his employment, the claimant drove a total of 112,436.2 miles. Of those miles, he drove 31,739.9 miles (28.23%) in Pennsylvania; 13,289.3 miles (11.82%) in Massachusetts; 11,416.4 miles (10.15%) in New York; and 10,754.2 (9.56%) in Connecticut. He drove the remaining 45,236.4 miles (40.2%) in twenty-one other States. In addition, the claimant made 110 trips for which a city in Massachusetts was at least the city of origin, the city where goods were loaded into his trailer for hauling, the destination city where the goods were delivered, or the terminating city. On an employer-generated report of the claimant's driving history with the company, Massachusetts appears more than 150 times as the location of a major trip event. In total, the claimant drove or parked his truck in Massachusetts on approximately 166 of the 356 days during which he was employed by the employer, more than were spent in any other State.

On January 18, 2010, the claimant injured his lower back while attempting to attach a loaded trailer to his truck at a location in Maine. He was diagnosed with a bulging disc that caused him to be physically unable to continue his work as a truck driver.

The claimant filed a claim for workers' compensation benefits with the department.[6]  Although an administrative judge found that the claimant was disabled physically as a result of the work-related injury and had no earning capacity, the judge dismissed the claim on a procedural ground, determining that Massachusetts lacked jurisdiction over the claim because it was neither the place of injury nor the place of hire.

The claimant appealed from this decision to the board, which recommitted the matter to the administrative judge for further findings.  On remand, a different administrative judge[7] found that the claimant's "numerous and ongoing contacts with Massachusetts" conferred jurisdiction in Massachusetts.

The matter once again was appealed to the board, this time by the insurer.  The board concluded that the administrative judge erred in concluding that the department had jurisdiction over the claim and therefore reversed the decision.[8]

---

[6] The claimant sought temporary total incapacity benefits, G. L. c. 152, § 34; partial incapacity benefits, G. L. c. 152, § 35; and medical benefits, G. L. c. 152, §§ 13 and 30.

[7] The original administrative judge held further hearings on remand; however, he left the bench prior to making any additional findings.  The matter was transferred to a second administrative judge who relied on the testimony and exhibits already entered in evidence.

[8] The employer initially argued that Indiana had exclusive jurisdiction over the claimant's claim based on a forum selection agreement the claimant signed upon hire.  When the board found that the forum selection agreement was not

The claimant appealed from the board's decision to the Appeals Court in accordance with G. L. c. 152, § 12 (2). We granted the insurer's application for direct appellate review.

Discussion. "Subject matter jurisdiction . . . among the [Commonwealth's] trial courts and administrative agencies 'is both conferred and limited by statute.'" Middleborough v. Housing Appeals Comm., 449 Mass. 514, 520 (2007), quoting Edgar v. Edgar, 403 Mass. 616, 619 (1988), S.C., 406 Mass. 628 (1990). The act empowers the department to administer the Commonwealth's workers' compensation system. The question of the department's jurisdictional limits, therefore, is one of statutory interpretation. See, e.g., Merchants Ins. Group, 88 Mass. App. Ct. at 267.

"The interpretation of a statute by the agency charged with primary responsibility for administering it is entitled to substantial deference." Gateley's Case, 415 Mass. 397, 399 (1993). See G. L. c. 30A, § 14 (7) (in reviewing board decisions, we give "due weight to the experience, technical competence, and specialized knowledge of the agency"). "[U]ltimately, [however,] the duty of statutory interpretation

---

enforceable in Massachusetts as against public policy, the employer argued instead that the claimant's employment was localized in Pennsylvania, the place of hire, and that Pennsylvania -- and not Massachusetts -- had jurisdiction under a theory of localization of employment.

is for the courts" (quotation and citation omitted). Moss's Case, 451 Mass. 704, 709 (2008). We review the board's interpretation of the act on a de novo basis. See McDonough's Case, 448 Mass. 79, 81 (2006); Merchants Ins. Group, 88 Mass. App. Ct. at 267.

1. Jurisdiction under the act. "Our primary duty is to interpret a statute in accordance with the intent of the Legislature." Pyle v. School Comm. of S. Hadley, 423 Mass. 283, 285 (1996). We have noted on previous occasions that the act "is a remedial statute and should be given a broad interpretation, viewed in light of its purpose and to promote the accomplishment of it beneficent design" (quotation and citation omitted). Neff, 421 Mass. at 73. See Higgins's Case, 460 Mass. 50, 53 (2011), quoting McCarty's Case, 445 Mass. 361, 364 (2005).

Although the act states that it applies to employees who receive a work-related injury "whether within or without the commonwealth,"[9] G. L. c. 152, § 26, it does not specify its jurisdictional limits. We have recognized, though, that the quoted language was intended to "enlarge, not restrict, the scope of the act." Lavoie's Case, 334 Mass. at 407. See Conant's Case, 33 Mass. App. Ct. 695, 697 (1992) ("Underlying

_____

[9] The act was amended to include the quoted language in 1927. See St. 1927, c. 309, § 3.

that provision is the State's legitimate interest in avoiding the undesirable consequence to a resident worker injured in another State of being unable to travel to seek benefits and possibly becoming a public charge").

We have interpreted the provision to grant Massachusetts jurisdiction over a claim where the employment contract was made in the Commonwealth even if the injury occurred elsewhere. See McLaughlin's Case, 274 Mass. 217, 220 (1931). We also have determined that Massachusetts may exercise jurisdiction over a claim when the injury occurred in the Commonwealth even if the employment contract was entered into elsewhere. See Lavoie's Case, 334 Mass. at 407. However, this court apparently has not had occasion before now to consider whether jurisdiction lies in circumstances where the Commonwealth is neither the place of hire nor the place of injury, although the board has. See Carlin's Case, 3 Mass. Workers' Comp. Rep. 41, 42 (1989).

Acknowledging that the act is to be interpreted so as "to broaden, rather than narrow, Massachusetts jurisdiction," the board has considered an alternative test to determine jurisdiction -- the "place of the employment relation." Hillman's Case, 15 Mass. Workers' Comp. Rep. 67, 74 (2001). See Carlin's Case, 3 Mass. Workers' Comp. Rep. at 42. As framed by the board, the place of the employment relation is the place of hire, unless something has happened to transfer the employment

relation to another State.  The employment relation may be transferred from the place of hire if a new contract is formed in another State, or if the employee acquires "a fixed and non-temporary employment situs" in another State.  Hillman's Case, supra at 72, quoting Carlin's Case, supra.  Applying this test to determine the location of the employment relationship in Carlin's Case, the board determined, in the circumstances of that case, that an employee who was hired and injured elsewhere had "sufficient contacts" with Massachusetts such that he had "acquired a fixed and non-temporary employment situs," thus giving Massachusetts jurisdiction over his workers' compensation claim.  Carlin's Case, supra.  See Hillman's Case, supra at 75 (Massachusetts had jurisdiction where "employee maintained sufficient contacts" with Commonwealth following involuntary transfer out of State such that employment relation was not transferred to other State).

Other States also have used the location of the employment relationship as an alternative test to determine whether jurisdiction lies for the purposes of adjudicating workers' compensation claims.  See, e.g., DiMuro v. Industrial Comm'n of Ariz., 142 Ariz. 57, 61 (1984) ("For out-of-state injuries, it is the presence of the employment relationship in Arizona which establishes Arizona's interest for purposes of applying its compensation laws"); Burse v. American Int'l Airways, 262 Conn.

31, 38 (2002) (jurisdiction lies if State is "[1] the place of the injury; [2] the place of the employment contract; or [3] the place of the employment relation" [citation omitted]); Johnson v. United Airlines, 550 So. 2d 134, 135 (Fla. Ct. App. 1989) (in determining jurisdiction under State workers' compensation statute, "it is the principal location of the claimant's employment and not the principal location of the employer's business which is relevant"); Shannon v. Communications Satellite Corp., 302 A.2d 582, 585 (Me. 1973) (jurisdiction may lie if State is "place employment relationship exists or is carried out"); Matter of Bugaj v. Great Am. Transp. Inc., 20 A.D.3d 612, 613 (N.Y. 2005), citing Matter of Nashko v. Standard Water Proofing Co., 4 N.Y.2d 199, 201 (1958) ("The inquiry does not focus on the location of the employer, but upon the location of the employment"); Todacheene v. G & S Masonry, 116 N.M. 478, 481 (1993) (claimant may recover under State workers' compensation act if employment "principally localized" in State, as defined by statute to mean employee is domiciled in State and spends "substantial part of his working time in service of his employer" in State); Perkins v. Arkansas Trucking Servs., 351 N.C. 634, 637 (2000) (jurisdiction lies for out-of-State injuries if [1] employment contract was made in State; [2] employer's principal place of business is in State; or [3] "the employee's principal place of employment" is in State); Madden

v. The Holland Group of Tenn., Inc., 277 S.W.3d 896, 898-899 (Tenn. 2009) (by statute, jurisdiction may lie if employment is "principally localized" in State or if employee is resident of State and State has "substantial connection" to employer-employee relationship).

States have taken different approaches to determining whether an employment relationship is located within their borders. Some, as did the board here, start from the presumption that the place of hire is the place of the employment relationship unless that relationship has been transferred to another State. See, e.g., DiMuro, 142 Ariz. at 62. Other States conduct a comparative analysis of the contacts between the State and the employment relationship, concluding that jurisdiction may only lie if the State has more significant contacts with the employment relationship than does any other State. See, e.g., Perkins, 351 N.C. at 638 (jurisdiction lies where State is employee's "principal place of employment" and no other State has same degree of "significant contacts to plaintiff's employment"). Still other States have concluded that the location of the employment relationship within those States depends upon the nature and extent of the employment contacts with the State. See, e.g., Burse, 262 Conn. at 38 (ties to Connecticut must be significant in order for it to be place of employment relationship); Hazealeferiou v. Labor Ready,

947 So. 2d 599, 605 (Fla. Ct. App. 2007) (for court evaluating "principal localization" of employment relationship, "temporal distribution" of employment is "a critical factor," which must be considered in conjunction with nature of contacts with State to determine whether sufficient contacts with State exist); Harlow v. Emery-Waterhouse Co., 484 A.2d 1002, 1004-1005 (Me. 1984) (evaluating contacts with State arising from employment relationship); Matter of Nashko, 4 N.Y.2d at 201 ("If sufficient significant contacts with this State appear so that it can reasonably be said that the employment is located here, then the Workmen's Compensation Board has jurisdiction"); Knapp v. Hamm & Phillips Serv. Co., 824 N.W.2d 785, 789 (S.D. 2012) ("We look for factors that tend to show a 'substantial connection' with South Dakota on a case-by-case basis to determine the location of the employment relationship" [citation omitted]); Madden, 277 S.W.3d at 900-901 (Tennessee resident must demonstrate "substantial connection" between State and employer-employee relationship to establish jurisdiction based on employment relationship).  See also Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 476 (1947) (State's "legitimate interest in providing adequate work[ers'] compensation measures for its residents . . . depends upon some substantial connection between the [State] and the particular employee-employer relationship").

In the instant case, the board appears to have adopted the narrowest of these tests for determining whether an employment relationship is located in Massachusetts.  Citing Carlin's Case, 3 Mass. Workers' Comp. Rep. 41, the board concluded that because Massachusetts was neither the place of hire nor the place of injury, the only way for the Commonwealth to have jurisdiction over the employee's claim would be if "something happened" to transfer the relationship from the place of hire, Pennsylvania, to Massachusetts.  Because the employee did not make such a showing, the board concluded that jurisdiction in the Commonwealth could not be established.

Given the remedial nature of the statute, and the mandate to broaden rather than restrict jurisdiction under the act, we conclude that a more flexible approach is necessary.  We hold, therefore, that jurisdiction to adjudicate workers' compensation claims lies in Massachusetts where there are sufficient significant contacts between the Commonwealth and the employment such that the employment can be said to be located in the Commonwealth.[10]  Consideration of the location of the employment

---

[10] We note that it is possible for jurisdiction to lie in more than one State.  See Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor v. National Van Lines, Inc., 613 F.2d 972, 981 (D.C. Cir. 1979) (State with "substantial contacts to an employment relationship may apply its compensation laws without regard to whether another jurisdiction has or could have asserted jurisdiction"); Springer v. J.B. Transp., 145 Conn. App. 805, 817 (2013) (question of

relationship for jurisdictional purposes more accurately embodies the intent of the Legislature because it better reflects the reality of the geographical mobility of large segments of workers.

Although determining the location of the employment relationship will depend upon the facts of each case, relevant considerations may include whether the employee is a resident of the Commonwealth; the employer's contacts with and presence in the Commonwealth; whether the employee was recruited or hired in the Commonwealth; whether and under what conditions the employee is able, or expected, to return to the Commonwealth between assignments; and whether the employer procured workers' compensation insurance in Massachusetts.  See Burse, 262 Conn. at 40; Matter of Nashko, 4 N.Y.2d at 202; Matter of Galster v. Keen Transp., 158 A.D.3d 959, 960-961 (N.Y. 2018); Matter of Bugaj, 20 A.D.3d at 613-614; Matter of Edick v. Transcontinental Refrigerated Lines, 300 A.D.2d 848, 849 (N.Y. 2002); Knapp, 824 N.W.2d at 790-791.

2.  Analysis.  Evaluating the contacts between the claimant's employment and the Commonwealth, we note that prior

jurisdiction based on location of employment relationship does not require showing that employment relationship exists only in forum State); Martin v. American Colloid Co., 804 N.W.2d 65, 69 n.2 (S.D. 2011) (more than one State may have "substantial connection to employment relationship, and both could therefore be considered the location of the employment relationship").

to and during his employment, the claimant was a Massachusetts resident who was licensed by the Commonwealth to drive commercial vehicles, including tractor-trailers.  See, e.g., Matter of Edick, 300 A.D.2d. at 849.  The claimant learned of the position with the employer by way of an advertisement placed in a local Massachusetts newspaper.  See, e.g., Matter of Bugaj, 20 A.D.3d at 614.

During the course of his employment, the claimant drove the employer's tractor-trailer thousands of miles in Massachusetts, more than he drove in any other State except Pennsylvania.  Further, the claimant had employment-related contact with Massachusetts on almost one-half (46.6%) of the days he worked for the employer, more than with any other State.  He picked up tons of goods from, and delivered tons of goods to, the employer's Massachusetts customers.  See, e.g., Springer v. J.B. Transp., Inc., 145 Conn. App. 805, 825-826 (2013).

The employer made regular use of three customer-owned facilities where drivers, including the claimant, regularly would drop off empty trailers and pick up loaded ones.  See, e.g., Matter of Edick, 300 A.D.2d. at 849.  The claimant was permitted to park the tractor-trailer in Massachusetts and stay at home during days off.  See, e.g., Matter of Bugaj, 20 A.D.3d at 614.

After sustaining his injury, the claimant returned to Massachusetts for medical care.  See, e.g., <u>Matter of Galster</u>, 158 A.D.3d at 960.  The employer maintained workers' compensation insurance with the insurer, which provided insurance to Massachusetts companies.  See, e.g., <u>Matter of Nashko</u>, 4 N.Y.2d at 202.

Considering the foregoing, there were sufficient significant contacts between Massachusetts and the claimant's employment such that the employment relationship was located in Massachusetts.  We therefore conclude that the Commonwealth has jurisdiction over the claimant's claim.

<u>Conclusion</u>.  We vacate the board's decision and remand the case to the department for further proceedings consistent with this opinion.

<u>So ordered</u>.